PEARSON, Chief Judge.
These three appeals by Evelyn Patricia Freedman grow out of her attempt to participate in the estate of her natural father, Harry Freedman. Two of the ap *424 peals concern substantially the same matter. We therefore have two orders to review. The first is a denial of appellant’s petition to revoke the probate of her father’s will.[1] *425 The second is a denial of appellant’s petition to appropriate a portion of the assets of the estate to the discharge of her claimed right as a pretermitted child.
Appellant has presented four points on the combined appeals. Points I, II, and IV are directed to the denial of the petition to revoke probate of the will. We will consider these points first and then Point III, which is directed to the denial of the petition to appropriate assets.
Point I urges that the county-judge’s court did not have jurisdiction over the subject matter. The argument under this point proceeds as follows: (1) the deceased was coerced by the fraud and harassment of his wife into making a property settlement agreement which was later made part of a New York judgment of separation; (2) the agreement and the judgment directed that the deceased should not change his will without the consent of his wife; (3) therefore the validity of the will depended upon the validity of the agreement; (4) since the county judge’s court had no jurisdiction to determine the question of the validity of the agreement, that court committed error when it proceeded to deny the petition to revoke probate after the appellant attacked the validity of the agreement.
We must note in connection with this line of reasoning that the appellant invoked the jurisdiction of the county judge’s court to determine the validity of the will when she filed her petition to revoke probate in that court. The county judge’s court has exclusive jurisdiction to determine the validity of a will. In re Dahl’s Estate, Fla.App.1960, 125 So.2d 332, 336. That codrt does not have power to determine the validity of a contract. In re Shepherd’s Estate, Fla.App.1961, 130 So.2d 888, 892. If the appellant wished to attempt to set aside the New York judgment and invalidate the separation agreement, she should have made a direct attack in the proper court. We hold that when she collaterally raised the issue of the validity of the separation agreement in the county judge’s court she did not thereby deprive that court of jurisdiction to proceed with a determination of her petition directed to *426 the will. See In re Niernsee’s Estate, 147 Fla. 388, 2 So.2d 737 (1941); State ex rel. Booth v. Byington, Fla.App.1964, 168 So.2d 164.
Appellant’s Point II urges that the denial of several motions for continuance was error. We have examined the record in the light of the assignments argued under this point and find no error. See Fain v. Cartwright, 132 Fla. 855, 182 So. 302 (1938); Carol City Utilities, Inc. v. Gaines Construction Co., Fla.App.1967, 201 So.2d 242.
Appellant’s Point IV is: “The trial court misapprehended the legal effect of the evidence as it applies to the ambulatory and revocable characteristics of the alleged will.” The appellant is aware that a testator’s contract not to revoke a will does not make a will irrevocable, since by definition a will is always revocable. See in re Shepherd’s Estate, Fla.App.1961, 130 So.2d 888. But she urges that under the facts set forth in the record the instrument which was probated as a will was not a will because it was not revocable upon the choice of the testator. We cannot agree. The fact that the decedent did not care to accept the penalties for violating his contract by changing his will did not take from him the power to change his will with regard to the appellant. We hold that the trial judge correctly determined that the contract not to change the will with regard to the appellant did not render the will void.
Appellant’s remaining point claims error upon the court’s dismissal of her petition for the appropriation of assets for her benefit as a pretermitted child. Section 731.11, Fla.Stat., F.S.A., provides:
“Children born after execution of will When a testator omits to provide in his will for any of his children born after the making of the will and such child has not had bestowed upon him by way of advancement a portion of the testator’s property equivalent to a child’s part, unless it appears from the will that such omission was intentional, such child shall receive a share in the estate of the testator equal in value to that which he would have received if the testator had died intestate. The share of the estate which is assigned to such pretermitted child shall be raised in accordance with the order of appropriation of assets set forth in this law.”
The trial judge dismissed appellant’s petition for the appropriation of assets. We must conclude that the judge determined that upon the facts shown by this record the appellant was not a pretermitted child. In order to decide whether this determination is correct we must consider the following summary of facts from the record: (1) the appellant was born in wedlock (i. e., while her mother was married to Benjamin Cohen) in 1946; (2) the testator’s will is dated May 10, 1955; (4) that will contains a reference to Evelyn Patricia Deering; (5) upon the testator’s petition the circuit court entered an “Order re Paternity” on February 8, 1962, judicially declaring the appellant to be the child of Harry Freedman and changing her name to Evelyn Patricia Freedman; (6) a codicil dated March 19, 1959, declares “I hereby ratify, confirm and republish my will bearing date the 10th day of May, 1955 * * *”; (7) a codicil dated July 11, 1966, bears the heading “Codicil to the Last Will and Testament of Harry Freedman” but makes no specific reference to the will of May 10, 1955; (8) the Petition for Probate of Will, signed by the appellees, listed Evelyn Patricia Freedman as a daughter of the testator.
Among the legal problems we must resolve in deciding whether appellant is a pretermitted child are:
1. Did the Order re Paternity have the effect of an adoption thus making appellant eligible to share in the testator’s estate as a pretermitted child ? [2]
*427 2. Did the codicil of July 11, 1966, published after the Order re Paternity, republish the original will so that the appellant was not a “[child] born after the making of the will” as described in § 731.11, Fla. Stat, F.S.A.?
The trial judge did not find it necessary to pass upon the effect of the Order re Paternity because he found that the will of May 10, 1955, did refer to the appellant so it appeared that her omission from that will was intentional. In addition the trial judge found that the second codicil did republish the will of May 10, 1955. We hold that the trial judge was correct in each instance.
The appellant, Evelyn Patricia Freedman, urges that the reference to Evelyn Patricia Deering in the will is not a reference to Evelyn Patricia Freedman, because a new legal relationship between Harry Freedman and the individual previously known as Evelyn Patricia Deering came into being with the entry of the Order re Paternity. It is true that the Order created a new legal relationship between Harry Freedman and the individual previously known as Evelyn Patricia Deering. But it is not true that the new legal relationship changed the right of the individual named in Harry Freedman’s will to share in Harry Freedman’s estate. If a will provides that a named individual shall not take under a will, that individual cannot share in .the testator’s estate as a pretermitted child not intentionally omitted from the will after the individual’s name has been changed by a judicial act. This rule is a corollary of the rule that “misnomer of a legatee will not defeat a bequest where the one intended can be identified with certainty.” Christian Herald Ass’n v. First Nat. Bank of Tampa, Fla.1949, 40 So.2d 563, 568. 4 Page on Wills § 34.38 (3rd ed. 1961). It is undisputed that “Evelyn Patricia Deer-ing” and “Evelyn Patricia Freedman” are different names for the same individual. Thus the conclusion is inescapable that the specific provision in the will that Evelyn Patricia Deering should not take under the will prohibits Evelyn Patricia Freedman from being allowed to share in Harry Freedman’s estate as a pretermitted child.
Turning to the second basis of the trial court’s decision that appellant was not entitled to relief under § 731.11, we note that the court must have taken into consideration § 731.17, Fla.Stat., F.S.A., which states: “The execution of a codicil referring to a previous will has the effect of republishing the will as modified by the codicil.” As we stated above, the second codicil, executed after the entry of the order re paternity, bears the heading “Codicil to the Last Will and Testament of Harry Freedman” but contains no specific reference to the will of May 10, 1955. The question thus is whether § 731.11 requires the codicil to make particular reference to the will of May 10, 1955, for the codicil to republish that will.
No Florida case sets forth the particularity with which a codicil must refer to a will in order to republish it. The cases collected on the subject in 2 Page on Wills § 23.7 (3rd ed. 1961) give examples of references sufficient to republish, including one reference to. “my last will • and testament”. We therefore agree with the trial court’s conclusion that the codicil of July 11, 1966, referred to the will of May 10, 1955, and thereby republished it.
In Waterbury v. Munn, 159 Fla. 754, 32 So.2d 603, 174 A.L.R. 620 (1947), it is pointed out that in construing testamentary instruments the intention of the testator, if ascertainable, must prevail. The trial judge had before him in this case a long history of the manner in which Harry Freedman attempted to provide for the needs of the appellant. This history fully supports the conclusions that the will of May 10, 1955, was Harry Freedman’s last will and testament and that it was his intention (as shown by the heading of the July 11, 1966, codicil) to have the codicil refer to that will.
*428 We hold that error has not been demonstrated. We affirm the order denying the appellant’s petition to revoke the probate of the will and the order denying the appellant’s petition for the appropriation of assets.
Affirmed.

. After receiving testimony and other evidence, the trial judge made a comprehensive statement of the factual background of the litigation. That statement reads, in part, as follows:
“HARRY FREEDMAN died Testate on January 31, 1967, a resident of Dado County, Florida and his Last Will and Testament dated May 10, 1956 and Codicils dated March 19, 1959 and July 11, 1966 were admitted to Probate in this Court on February 16, 1967. The Testator left surviving a wife, VALERIE Iv. FREEDMAN, from whom he was legally separated and with whom he had entered into a Separation Agreement in the State of New York dated March 5, 1953, and a Supplementary Agreement dated February 15, 1954, and which Agreements were duly approved and expressly made a part of the Judgment of Separation of the Supreme Court, County of New York, State of New York, dated March 5, 1954. The Testator also left surviving two daughters, ROBERTA MILLER and JUDITH KRAMER, who are the duly qualified Co-Executrices herein.
“EVELYN PATRICIA FREEDMAN, the Petitioner, was born EVELYN PATRICIA COHEN, in Now York City, New York, on November 27, 1946, at which time her mother was married to BENJAMIN COHEN, also known as TEDDY COHEN. BENJAMIN COHEN obtained a Nevada divorce in January, 1951. The Testator, however, acknowledged his paternity of the Petitioner after 1953, and for at least twelve (12) years prior to his death had lived as a family unit with the Petitioner and her mother, ALMA DEERING- FREEDMAN, in Miami Beach, Florida.
“Under the terms of the Testator’s Separation Agreement dated March 5, 1953, as modified and supplemented by that certain Supplementary Agreement dated February 15, 1954, the Testator obligated himself to dispose of his Testamentary Estate to and between his wife, VALERIE Iv. FREEDMAN and the lawful issue of their marriage in the manner particularly set forth in said Separation Agreement. Said Separation Agreement, as supplemented and modified, was expressly approved, ratified and incorporated in the Order and Decree of the Supreme Court of the State of New York, County of New York, dated March 5, 1954, whereby said VALERIE K. FREEDMAN was granted a separation from the Testator.
“In Article SB of the Testator’s Last Will and Testament dated May 10, 1955, as republished by his Codicils dated March 19, 1959 and July 11, 1966, the Testator expressly referred to the Petitioner as follows:
‘B. In keeping with the obligations of my Agreement with VALERIE, I make no provision herein for EVELYN PATRICIA DEERING. I have made other provisions for her benefit however and I hope to be able to make additional provisions for her benefit during the remainder of my lifetime.’ ”
“The primary issue raised by the Petitioner is whether or not the Testator died leaving a Last Will and Testament and the Codicils thereto free from the taint of duress, coercion, and undue influence. The Court has heard abundant evidence depicting the life of the decedent, HARRY FREEDMAN, his marriage to VALERIE Iv. FREEDMAN, the birth of their daughters, ROBERTA and JUDITH, his success in the business world, his becoming acquainted with ALMA DEERING COHEN (FREEDMAN), and the events that transpired thereafter.
“It appears from the testimony that until the Testator, HARRY FREEDMAN, became acquainted with ALMA DEERING COHEN, he enjoyed a relatively normal and usual happy relationship with his wife and daughters. Upon liis meeting MRS. COHEN, they formed a romantic attachment which matured into a meretricious relationship resulting in the birth of the Petitioner, EVELYN PATRICIA FREEDMAN, as above set forth. This relationship between the decedent and MRS. COHEN, and the birth of the daughter, EVELYN PATRICIA, were wholly unknown to the Testator’s wife and daughters until quite some time after the birth of the child. The discovery of this situation by the lawful wife and the adult daughters resulted in separation, bitterness, discord, confrontation, and all of the other unhappiness usually associated with such discovery. The disillusion and heartbreak of the wife and the resentment of the adult daughters was a perfectly normal reaction to such a discovery; the attempts made by the wife and daughters to break off the relationship between the decedent and MRS. COHEN were perfectly natural actions under the circumstances. *425 Ppon tlie testimony and evidence adduced before the Court, the Court finds that there is insufficient and inadequate evidence to support the Petitioner's allegation of duress, coercion, and undue influence in procuring the execution of the Will and Codicil, and the Petitioner has failed to carry the burden of proof with respect thereto. A wife can he expected to exert a greater degree of influence upon a testator than a stranger. Under the facts and circumstances disclosed in this case, that is especially true.
“The Testator had at all times in question the finest of legal advice. lie knew that he could always change his Will notwithstanding his Separation Agreements. He did in fact do so. The decedent was a man obviously wilful by nature but nevertheless one who keenly felt his responsibilities. During all of the time that he abandoned and separated himself from his wife and Ilia lawful daughters, he provided for them. He felt so keenly his obligation towards the daughter born of his relationship with MRS. COHEN that he went into the Circuit Court of Dade County, Florida, and established judicially the fact of his paternity and asked that she be awarded his name of FREEDMAN. In his Last Will and Testament, and reaffirmed by the Codicils thereafter made to his Last AVill, he acknowledged her as his daughter and commented upon the provisions that he had made for her welfare, and expressed his hope that ho would be able to make additional provisions for her benefit during the remainder of her lifetime. The record is abundantly clear that the decedent not only provided for the lifetime of MRS. COHEN, but that he made substantial provisions for the care and maintenance and the future of his daughter, EVELYN PATRICIA, the Petitioner here. There is no substantial evidence before the Court that the Separation Agreements, the subsequent Last Will and Testament, and the Codicils thereto were other than the free and voluntary act of the decedent entered into and made by him after full advice of counsel and due consideration of all of the objects of his bounty, and that the same constitute his free acts and deed and were not induced or brought about as a result of duress, coercion or undue influence on the part of any person.”

. See In re Frizzell’s Estate, Fla.App.1963, 156 So.2d 558.