272 So.2d 195 (1973)
Judith KRAMER et al., Appellants,
v.
Evelyn Patricia FREEDMAN, Appellee.
No. 71-1326.
District Court of Appeal of Florida, Third District.
January 15, 1973.
Rehearing Denied February 15, 1973.
Talianoff & Bader, Sibley, Giblin, Levenson & Ward, Miami Beach, for appellants.
Horton, Schwartz & Perse, Dunn & Johnson, Miami, for appellee.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
Appellants, defendants before the trial court, seek review of an adverse final judgment *196 in a non-jury trial impressing a constructive trust in appellee's favor upon the assets of the estate of her father, Harry Freedman.
The status of the respective parties and the essential facts of the instant case were aptly pointed out by the trial judge below and are restated, in part, herein:
"... In this cause, the Plaintiff, Evelyn Patricia Freedman, seeks to impress a constructive trust upon certain assets of the estate of her father now being administered in the County Judge's Court in and for Dade County, Florida, in a proceeding styled, In re: Estate of Harry Freedman, deceased, File No. 73787-B. The Plaintiff claims that she is entitled to a constructive trust on the legacies in that estate to the Defendant, Valerie K. Freedman, her father's estranged wife, and her two half-sisters, Harry Freedman's daughters, the Defendants, Roberta Miller and Judith Kramer, who are also co-executrices of the estate, and that the extent of this constructive trust should be one third of the amounts to be distributed to the Defendant, Roberta Miller and the Defendant, Judith Kramer, so that she would, in effect, share equally with her half sisters in the estate of her father. This claim for relief is based upon two essential factual contentions:
"A) That the Defendant, Valerie K. Freedman, maliciously and tortiously interfered with the Plaintiff's reasonable expectation of receiving a legacy from her father and his estate in an amount equal to her half sisters' bequests. This `wrongful interference' allegedly consisted of many instances of conduct by Valerie K. Freedman directed toward Harry Freedman, the Plaintiff's mother, and the Plaintiff herself, which resulted in Harry Freedman's executing separation agreements with Valerie K. Freedman in the State of New York on March 5, 1953, and February 15, 1954, which were made a part of a Judgment of Separation of the Supreme Court, County of New York, State of New York, dated March 5, 1954. Under these agreements, Harry Freedman in effect bound himself not to leave any sums by Will to the Plaintiff. In fact, in accordance with the terms of these agreements, Harry Freedman's Will did not provide for the Plaintiff; and
"B) That, prior to his death, both of the Plaintiff's half sisters, Roberta Miller and Judith Kramer, promised Harry Freedman that they would divide any legacies they received under his Will with the Plaintiff, so that, in fact, the three daughters of Harry Freedman would receive equal amounts of his estate.
"The Defendants, Valerie K. Freedman, Roberta Miller, her husband, and Judith Kramer and her husband, denied the essential factual bases of the Plaintiff's claim. In addition, they raise the defenses that this action is precluded under the doctrine of res judicata by the decision of the County Judge's Court of Dade County which denied the Plaintiff's petition to revoke the probate of Harry Freedman's Will and which was affirmed by the Third District Court of Appeal in In re: Estate of Freedman, Fla.App. 1969, 226 So.2d 423. It is also contended that the present action is barred by the terms of the Separation Judgment entered in New York in 1954, and that this proceeding is no more than an improper collateral attack upon that judgment.
"The Court has heard and weighed the testimony of the witnesses and read and considered the depositions and the exhibits, including the complete file of the County Judge's Court case, introduced into evidence at this trial. In addition, the Court has heard argument of counsel and has received and considered extensive memoranda of law from the parties involved. By and upon the basis *197 of clear and convincing evidence in the cause, the Court finds as follows:
"1. A) Prior to his execution of the separation agreements of March 5, 1953 and February 15, 1954 and the entry of the Judgment of Separation in New York on March 5, 1954, Harry Freedman has formed the fixed purpose and desire of giving the plaintiff, his daughter, Evelyn Patricia Freedman, a share in his estate equal to that of his other daughters, Roberta Miller and Judith Kramer. This purpose, often and vehemently expressed by Harry Freedman, gave the Plaintiff the virtual certainty of receiving this share if her father's desires were carried out.
"B) The Defendant, Valerie K. Freedman, wrongfully, maliciously and tortiously interfered and effectively precluded the effectuation of Harry Freedman's fixed purpose and desire to this effect by engaging in a series of threats and actions that began upon Valerie K. Freedman's discovery of the existence of the Plaintiff, Evelyn Patricia Freedman. Valerie K. Freedman began a course of conduct characterized by the harassment of the Plaintiff and her mother, Alma Freedman. These acts, among others, consisted of the pounding on the door of their apartment, shouting threats and epithets such as, `I'll kill that bastard child'; reporting to the school authorities that the Plaintiff, Evelyn Patricia Freedman, was a bastard child; and reporting to other authorities that Alma Freedman was an unfit mother; repeated telephone calls; and other acts of harassment wherein Valerie K. Freedman reported Alma Freedman to the Bureau of Internal Revenue and at the same time reported Harry Freedman to the Bureau of Internal Revenue, indicating to the Bureau that Harry Freedman has large sums of unreported cash. She then reported Harry Freedman to the Securities and Exchange Commission, alleging the improper transfer of stocks and other abuses of Federal law. She told Harry Freedman that his bastard child would never have an opportunity to enjoy Harry Freedman's money or wealth. These acts of harassment culminated in two actual attempts by Vallerie K. Freedman to cause grave bodily injury and death to the Plaintiff by attempting to run her down with an automobile in Asbury Park, New Jersey. These acts were the direct and `proximate' cause of Harry Freedman's execution of the separation agreements in question and of the Judgment of Separation entered thereon. The pertinent part of the Separation Agreement and the reason for Harry Freedman's entering into said Agreement is quoted as follows:
"... the wife agrees that as long as the husband complies with all the terms and conditions of this agreement on his part to be performed she will not, directly or indirectly, personally or through any other person, entity or agency, communicate with Alma Deering or her child, Evelyn Patricia Deering, or do or say anything to molest, harass, disturb or slander them, or either of them, or in any way to interfere or attempt to interfere, in their lives, or in the custody, upbringing or education of said child. It is distinctly understood that performance of the foregoing provision by the wife is of the essence of this agreement in its entirety, and that a breach thereof shall be deemed a material breach of this agreement."
"By the terms of the said Separation Agreement, Harry Freedman was precluded from conferring any bequest or legacy upon Evelyn Patricia Freedman. It was the terms of these documents which resulted in the Plaintiff's being in fact `cut out' of the Will executed by Harry Freedman.
"C) The Plaintiff would have received a bequest in the Will and from the estate of Harry Freedman equal to that of his other daughters, Roberta Miller and Judith *198 Kramer, but for the tortious conduct of Valerie K. Freedman since he expressed the desire of having the Plaintiff, Evelyn Patricia Freedman, share in his estate equally with his other two daughters on numerous occasions.
"2. A) Harry Freedman died on January 31, 1967. Shortly before his death and during his last illness, the Defendant, Judith Kramer, promised Harry Freedman in writing and the Defendant, Roberta Miller, promised Harry Freedman, both orally and in writing that they would share their legacies from their father `three ways'; that is, so that the Plaintiff, Judith Kramer, and Roberta Miller would receive equal shares of the estate. Letters from both Roberta Miller and Judith Kramer, which contained this promise, were in fact received by Harry Freedman.
"B) Harry Freedman relied upon these promises of Roberta Miller and Judith Kramer and did not in fact change his Will so as to leave the Plaintiff a share of his estate equal to that of Roberta Miller and Judith Kramer.
"* * *"
Thereupon, the trial court held that the prior will revocation proceedings did not bar the instant suit for malicious interference under the doctrines of res judicata and/or collateral estoppel. In addition, the court held that the instant cause was not an improper collateral attack on the New York judgment and separation agreement. Accordingly, the court impressed a trust in favor of the appellee plaintiff on two separate theories: one based on the appellee's claim of malicious interference with an estate expectancy, and the second based on the written and oral promises of the appellant daughters to share their bequests in an equal manner with the appellee. The chancellor then proceeded to impress a constructive trust upon the proceeds of the estate so that the appellee would receive a one-third equal share of the estate with the appellant daughters. Thus, the trial judge reached the same result by way of two separate and independent grounds, either of which alone could have supported his conclusion.
It is, of course, necessary to prove the existence of a constructive trust by clear and convincing evidence. Carberry v. Foley, Fla.App. 1968, 213 So.2d 635. The doctrine of constructive trust is well established in Florida law and the courts will impose the same where "one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold." Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422. In the case sub judice, the appellee has alleged certain wrongful acts on behalf of the appellants that would give rise to such grounds that would entitle her to relief by a court of equity.
The first basis relied on by the trial court dealt with the effect of certain acts by the appellant, Valerie K. Freedman and her daughters, that led to the execution of the separation agreement heretofore mentioned, that allegedly required the decedent to leave the appellee out of his will. The appellee claimed that these and other wrongful acts maliciously interfered with her right to inherit from decedent's estate by means of coercion, undue influence and duress. The court must take note of the fact that these same issues and allegations were, in sum and substance, presented to the County Judge's Court in appellee's prior attempt to revoke decedent's will. In Re Estate of Freedman, Fla.App. 1969, 226 So.2d 423. In that case, this court upheld that finding of the county judge to the effect that "there is insufficient and inadequate evidence to support the Petitioner's allegation of duress, coercion, and undue influence in procuring the execution of the Will and Codicil, and the Petitioner has failed to carry the burden of proof with respect thereto." 226 So.2d at 425. It has been noted that a cause of action *199 for wrongful interference with the right to inherit includes conduct constituting duress, fraud or undue influence as alleged in the instant cause. Allen v. Leybourne, Fla.App. 1966, 190 So.2d 825. We are of the opinion that the appellee has had the opportunity, and did in fact, litigate the same issues against the same parties in the prior revocation proceedings and did not prevail. Thus, as to appellee's claim for malicious interference, we hold that such claim is barred under the theory of collateral estoppel or estoppel by judgment. Donahue v. Davis, Fla. 1953, 68 So.2d 163; Reed v. Reed, Fla. 1954, 70 So.2d 836.
Nonetheless, the chancellor impressed a constructive trust in the instant case on a second, alternative ground, sufficient in and of itself to support the result. The chancellor held that the acts of the appellant daughters were such that they made oral and written representations of their intent to share the estate with the appellee so that the decedent would not change his will. It has been recognized that such promises may very well be the basis for the imposition of a constructive trust. Restatement, Trusts 2d, § 55(1). The sole attack of appellants against such a finding is the insufficiency of the evidence presented to support the conclusion of the chancellor. We find no need to detail the testimony presented before the trial court since it is not within the purview of an appellate court to re-evaluate the qualitative or quantitative weight of the evidence. Westerman v. Shell's City, Inc., Fla. 1972, 265 So.2d 43. We have considered the record before us, and the briefs and arguments of counsel and are of the opinion that the chancellor had sufficient evidence before him on which to base his conclusion.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is hereby affirmed. Naples v. State, Fla.App. 1958, 100 So.2d 78; Firestone v. Firestone, Fla. 1972, 263 So.2d 223.
Affirmed.