BOYD, Justice
(dissenting).
I respectfully dissent.
I believe we do have jurisdiction, based on conflict between the decision sought to be reviewed and Moneyham v. Hamilton.[1]
*98 The long and complicated details of this case were cogently set forth in the decision of the Third District, and, in view of the complex fact pattern involved, bear repeating here:
“Appellants, defendants before the trial court, seek review of an adverse final judgment in a non-jury trial impressing a constructive trust in appellee’s favor upon the assets of the estate of her father, Harry Freedman.
“The status of the respective parties and the essential facts of the instant case were aptly pointed out by the trial judge below and are restated, in part, herein:
“ ‘. . . In this cause, the Plaintiff, Evelyn Patricia Freedman, seeks to impress a constructive trust upon certain assets of the estate of her father now being administered in the County Judge’s Court in and for Dade County, Florida, in a proceeding styled, In re: Estate of Harry Freedman, deceased, File No. 73787-B. The Plaintiff claims that she is entitled to a constructive trust on the legacies in that estate to the Defendant, Valerie K. Freedman, her father’s estranged wife, and her two half-sisters, Harry Freedman’s daughters, the Defendants, Roberta Miller and Judith Kramer, who are also co-executrices of the estate, and that the extent of this constructive trust should be one third of the amounts to be distributed to the Defendant, Roberta Miller and the Defendant, Judith Kramer, so that she would, in effect, share equally with her half sisters in the estate of her father. This claim for relief is based upon two essential factual contentions :
‘ “A) That the Defendant, Valerie K. Freedman, maliciously and tortiously interfered with the Plaintiff’s reasonable expectation of receiving a legacy from her father and his estate in an amount equal to her half sisters’ bequests. This ‘wrongful interference’ allegedly consisted of many instances of conduct by Valerie K. Freedman directed toward Harry Freedman, the Plaintiff’s mother, and the Plaintiff herself, which resulted in Harry Freedman’s executing separation agreements with Valerie K. Freedman in the State of New York on March S, 1953, and February 15, 1954, which were made a part of a Judgment of Separation of the Supreme Court, County of New York, State of New York, dated March 5, 1954. Under these agreements, Harry Freedman in effect bound himself not to leave any sums by Will to the Plaintiff. In fact, in accordance with the terms of these agreements, Harry Freedman’s Will did not provide for the Plaintiff; and
‘ “B) That, prior to his death, both of the Plaintiff’s half sisters, Roberta Miller and Judith Kramer promised Harry Freedman that they would divide any legacies they received under his Will with the Plaintiff, so that, in fact, the three daughters of Harry Freedman would receive equal amounts of his estate.
“ ‘The Defendants, Valerie K. Freedman, Roberta Miller, her husband, and Judith Kramer and her husband, denied the essential factual bases of the Plaintiff’s claim. In addition, they raise the defenses that this action is precluded under the doctrine of res judicata by the decision of the County Judge’s Court of Dade County which denied the Plaintiff’s petition to revoke the probate of Harry Freedman’s Will and which was affirmed by the Third District Court of Appeal in In re: Estate of Freedman, Fla.App.1969, 226 So.2d 423. It is also contended that the present action is barred by the terms of the Separation Judgment entered in New York in 1954, and that this proceeding is no more than an improper collateral attack upon that judgment.
“ ‘The Court has heard and weighed the testimony of the witnesses and read and considered the depositions and the exhibits, including the complete file of the County Judge’s Court case, introduced into evidence at this trial. In addition, the Court has heard argument of counsel and has re *99 ceived and considered extensive memoran-da of law from the parties involved. By and upon the basis of clear and convincing evidence in the cause, the Court finds as follows:
‘ “1. A) Prior to his execution of the separation agreements of March 5, 1953 and February 15, 1954 and the entry of the Judgment of Separation in New York on March 5, 1954, Harry Freedman has formed the fixed purpose and desire of giving the plaintiff, his daughter, Evelyn Patricia Freedman, a share in his estate equal to that of his other daughters, Roberta Miller and Judith Kramer. This purpose, often and vehemently expressed by Harry Freedman, gave the Plaintiff the virtual certainty of receiving this share if her father’s desires were carried out.
‘ “B) The Defendant, Valerie K. Freedman, wrongfully, maliciously and tor-tiously interfered and effectively precluded the effectuation of Harry Freedman’s fixed purpose and desire to this effect by engaging in a series of threats and actions that began upon Valerie K. Freedman’s discovery of the existence of the Plaintiff, Evelyn Patricia Freedman. Valerie K. Freedman began a course of conduct characterized by the harassment of the Plaintiff and her mother, Alma Freedman.. These acts, among others, consisted of the pounding on the door of their apartment, shouting threats and epithets such as, I’ll kill that bastard child’; reporting to the school authorities that the Plaintiff, Evelyn Patricia Freedman, was a bastard child; and reporting to other authorities that Alma Freedman was an unfit mother; repeated telephone calls; and other acts of harassment wherein Valerie K. Freedman reported Alma Freedman to the Bureau of Internal Revenue and at the same time reported Harry Freedman to the Bureau of Internal Revenue, indicating to the Bureau that Harry Freedman has large sums of unreported cash. She then reported Harry Freedman to the Securities and Exchange Commission, alleging the improper transfer of stocks and other abuses of Federal law. She told Harry Freedman that his bastard child would never have an opportunity to enjoy Harry Freedman’s money or wealth. These acts of harassment culminated in two actual attempts by Valerie K. Freedman to cause grave bodily injury and death to the Plaintiff by attempting to run her down with an automobile in Asbury Park, New Jersey. These acts were the direct and ‘proximate’ cause of Harry Freedman’s execution of the separation agreements in question and of the Judgment of Separation entered thereon. The pertinent part of the Separation Agreement and the reason for Harry Freedman’s entering into said Agreement is quoted as follows:
. . . the wife agrees that as long as the husband complies with all the terms and conditions of this agreement on his part to be performed she will not, directly or indirectly, personally or through any other person, entity or agency, communicate with Alma Deering or her child, Evelyn Patricia Deering, or do or say anything to molest, harass, disturb or slander them, or either of them, or in any way to interfere or attempt to interfere, in their lives, or in the custody, upbringing or education of said child. It is distinctly understood that performance of the foregoing provision by the wife is of the essence of this agreement in its entirety, and that a breach thereof shall be deemed a material breach of this agreement.”
‘ “By the terms of the said Separation Agreement, Harry Freedman was precluded from conferring any bequest or legacy upon Evelyn Patricia Freedman. It was the terms of these documents which resulted in the Plaintiff’s being in fact ‘cut out’ of the Will executed by Harry Freedman.
‘ “C) The Plaintiff would have received a bequest in the Will and from the estate *100 of Harry Freedman equal to that of his other daughters, Roberta Miller and Judith Kramer, but for the tortious conduct of Valerie K. Freedman since he expressed the desire of having the Plaintiff, Evelyn Patricia Freedman, share in his estate equally with his other two daughters on numerous occasions.
‘“2. A) Harry Freedman died on January 31, 1967. Shortly before his death and during his last illness, the Defendant, Judith Kramer, promised Harry Freedman in writing and the Defendant, Roberta Miller, promised Harry Freedman, both orally and in writing that they would share their legacies from their father ‘three ways’; that is, so that the Plaintiff, Judith Kramer, and Roberta Miller would receive equal shares of the estate. Letters from both Roberta Miller and Judith Kramer, which contained this promise, were in fact received by Harry Freedman.
‘ “B) Harry Freedman relied upon these promises of Roberta Miller and Judith Kramer and did not in fact change his Will so as to leave the Plaintiff a share of his estate equal to that of Roberta Miller and Judith Kramer.
< « * * * ’
“Thereupon, the trial court held that the prior will revocation proceedings did not bar the instant suit for malicious interference under the doctrines of res judicata and/or collateral estoppel. In addition, the court held that the instant cause was not an improper collateral attack on the New York judgment and separation agreement. Accordingly, the court impressed a trust in favor of the appellee plaintiff on two separate theories: one based on the appellee’s claim of malicious interference with an estate expectancy, and the second based on the written and oral promises of the appellant daughters to share their bequests in an equal manner with the appellee. The chancellor then proceeded to impress a constructive trust upon the proceeds of the estate so that the appellee would receive a one-third equal share of the estate with the appellant daughters.” [2]
As to “half” of this case, the Third District correctly noted:
“The first basis relied on by the trial court dealt with the effect of certain acts by the appellant, Valerie K. Freedman and her daughters, that led to the execution of the separation agreement heretofore mentioned, that allegedly required the decedent to leave the appellee out of his will. The appellee claimed that these and other wrongful acts maliciously interfered with her right to inherit from decedent’s estate by means of coercion, undue influence and duress. The court must take note of the fact that these same issues and allegations were, in sum and substance, presented to the County Judge’s Court in appellee’s prior attempt to revoke decedent’s will. In Re Estate of Freedman, Fla.App.1969, 226 So.2d 423. In that case, this court upheld that finding of the county judge to the effect that ‘there is insufficient and inadequate evidence to support the Petitioner’s allegation of duress, coercion, and undue influence in procuring the execution of the Will and Codicil, and the Petitioner has failed to carry the burden of proof with respect thereto.’ 226 So.2d at 425. It has been noted that a cause of action for wrongful interference with the right to inherit includes conduct constituting duress, fraud or undue influence as alleged in the instant cause .... We are of the opinion that the appellee has had the opportunity, and did in fact, litigate the same issues against the same parties in the prior revocation proceedings and did not prevail. Thus, as to appellee’s claim for malicious interference, we hold that such claim is barred under the theory of collateral estop-pel or estoppel by judgment . . . . ”[3]
However, as to the other “half” of this case, the Third District erroneously held that the trial judge was correct in his im- *101 pressment of a constructive trust, based upon evidence that the half-sisters had made oral and written representations, of their intent to share the estate with plaintiff-daughter, so that the decedent would not change his will.
Therefore, I would reverse this second “half” of the Third District’s opinion, for reasons which will be set forth below.
In the instant case, if we assume, ar-guendo, that both Roberta Miller and Judith Kramer promised Harry Freedman, prior to his death, in writing, in response to Harry Freedman’s request, to share his estate equally with Patricia, the only consideration for these promises would be Harry Freedman’s forbearance from revoking his will. The trial judge acknowledged this when he held:
“Harry Freedman relied upon these promises of Roberta Miller and Judith Kramer and did not in fact change his will so as to leave the plaintiff a share of his estate equal to that of Roberta Miller and Judith Kramer.”
It is the law in Florida, and elsewhere, that the frustration of a mere intent to revoke a will is not sufficient to impress a trust on a devise or legacy, but, rather, the frustration must be of an actual attempt to revoke a will. Moneyham v. Hamilton, supra.[4] The rationale behind this 'rule of law is that if it were otherwise, the Statute of Wills would be emasculated by allowing a will to be partially or wholly revoked by a mere oral declaration. In the instant case, the evidence purportedly supporting the trial court’s findings and conclusions concerns, at best, a frustration of a mere intent to change a testamentary disposition and, therefore, it is insufficient, as a matter of law, to support the imposition of a constructive trust.
This Court held in Moneyham, that while the frustration of a mere intent to revoke a will is not sufficient to impress a trust on the devise, where an interested person, through fraud, duress, coercion, or deception, frustrates an attempt, as distinguished from an intent, to revoke a will, the interested person so acting will not be allowed to profit from his wrongful act, and equity may impress a trust in favor of the heirs at law. The facts revealed that the: .„*&•" >
“testator during his last limess and when he was unable to leave his bed told defendant, his daughter, Lydia Hamilton, where the will was laid away in another house, and asked her to get the will and bring it to him that he might destroy it, but that Lydia pretended to testator that she could not find the will, while in truth and in fact she did find it and kept same in her possession until testator died, and then filed it for probate.” [5]
In the face of the Moneyham fact pattern, we held that such conduct would not impress a trust on the devise in favor of the heirs at law other than the sole beneficiary, and, would not make the will inoperative, there having been no attempt by the testator to revoke his will.
In Reiter v. Carroll,[6] the Supreme Court of Arkansas decided a similar case. In Reiter, the testator requested a beneficiary to destroy the testator’s will, and the beneficiary falsely told the testator that he had destroyed it. The heirs of the deceased testator sued the beneficiary in an attempt to impress a constructive trust on his legacy. The Court refused to impress the constructive trust and held:
“Before one may be held to be a trustee ex maleficio in a .case such as this, the proof must show that the defendant’s conduct was such as to have prevented the testator from accomplishing what would have amounted to a legal revocation. To hold that any less quality or quantum of proof is sufficient, would be *102 to repeal or overturn the Statute of Frauds, and allow a will to be revoked by a mere oral declaration. This is exactly what would be accomplished if the appellants prevailed in this case because all that Mr. Carroll ever did was to declare orally that he wanted the will revoked.
* * * * * *
“Before there is made a case for equitable intervention, the plaintiff must prove these two essentials: (1) That the testator undertook to accomplish acts which would have resulted in a legal ■revocation of the will, and (2) that the testator was prevented from the fulfillment of such acts by the force or fraud of the defendant. When these two essentials are proved, then a case is made for equitable intervention.” [7]
Also relevant is the Supreme Court of Texas case of Pope v. Garrett.[8] In that case, an intestate, on her death bed, requested a neighbor to have a will prepared, leaving all of her property to a beneficiary who was not a relative. When the will was brought to the intestate for signature, the heirs were present, and prevented the intestate from signing the will. The Court imposed a constructive trust, because it found that the heirs had by physical force, and by creating a disturbance, prevented the intestate from executing the will. The Court took pains to note that the constructive trust doctrine is invoked with great caution, especially where proof of the wrongful act rests in parol, in order that it may not defeat purposes of the Statute of Wills and the Statute of Frauds, as well as the Statute of Descent and Distribution.
In the instant case, no evidence was offered showing any attempt by Harry Freedman to revoke the legacy to his daughters; therefore, both Moneyham and Reiter are directly applicable, and the imposition of the constructive trust on the basis of the alleged promises to the testator to share legacies is not supported by the applicable law.
In summary, it is my view that a written last will and testament, validly executed, without undue influence should prevail in the absence of clear and convincing evidence showing that the attempt of the .testator to change same was thwarted by other persons.
Historically, one executes a last will and testament with a sense o.f gravity, knowing the law will protect and enforce his will. He knows that once he is dead some persons will likely be dissatisfied with what they have or have not received. The Statute of Wills has, for generations, protected those silenced by death from the noisy relatives and friends who would fight over such relics as worthless rocking chairs and washboards. Our Legislature and courts have strongly sought to protect the property left by the dead from unfair and unlawful claims.
In this case, the deceased had adequate opportunity to modify his will to include Patricia if he had wanted to do so. For decades, his two “families” had hated each other, and he had no basis to expect anything between them but bitterness and hostility after his death.
Simply stated, I think when a person is influenced by a legatee or devisee to change his will, but does not do so, the will remains valid as written, and the change of mind is meaningless. If a person seeks to change his will and is thwarted in his attempt, the courts will establish a, trust to carry out the wishes of the deceased. Here there is questionable evidence that Harry intended the will changed, and no evidence that he attempted to do so.
Accordingly, I would quash the opinion of the District Court of Appeal, Third District, and remand the cause.
ADKINS, J., concurs.

. 124 Fla. 430, 168 So. 522 (1936).

. 272 So.2d 195-198 (Fla.App.3d 1973).

. Id. at 198-199. (Citations omitted.)

. See note 1, supra.

. 168 So. at 522-623.

. 210 Ark. 841, 198 S.W.2d 163 (1946).

. 198 S.W.2d at 166-167. (Emphasis supplied.)

. 147 Tex. 18, 211 S.W.2d 569 (Tex.1948).