374 So.2d 71 (1979)
Antonia R. TURTURRO, As Personal Representative of the Estate of Marge Smith, Deceased, Antonia R. Turturro, Individually, and Unity School of Christianity, Appellant,
v.
Joseph SCHMIER, As Administrator Ad Litem of the Estates of Morris Siegel and Nina Siegel, Appellees.
No. 78-1158.
District Court of Appeal of Florida, Third District.
July 31, 1979.
Rehearing Denied September 11, 1979.
*72 Cuadrado & Parks, Bradford, Williams, McKay, Kimbrell, Hamann & Jennings and John P. Horan, Miami, for appellant.
Joseph Schmier and Lloyd S. Glasser, Hallandale, for appellees.
Before PEARSON, HENDRY and HUBBART, JJ.
PER CURIAM.
This appeal and cross appeal stem from an action to recover real property and to quiet title to said property. The main appeal raises the question of whether the court properly granted summary final judgment in favor of the personal representative of the estates of Morris Siegel and Nina Siegel; the cross appeal deals with whether the trial court's subsequent order vacating a certain part of the final judgment, as it pertains to one of the appellee-estates, should be reversed, as a matter of law.
In 1977, the personal representative of the two named estates, filed the quiet title action in regard to real property located in Dade County, Florida. The defendants in the action were Antonia R. Turturro, individually and as personal representative of the estate of Marge Smith, and the Unity School of Christianity. The thrust of the complaint was that the subject real property was not legally a valid asset included in the estate of Marge Smith,[1] the primary allegation was that Marge Smith had, in reality, been merely the holder of a life estate until the time of her death in 1975, and that the estates of Morris Siegel and Nina Siegel were actually the fee simple title holders to which the property reverted upon the demise of Marge Smith.
A brief history of the transactions involving the property is necessary. The record reveals that in 1946, Morris Siegel, wishing to provide a home for a handicapped employee and close friend, Marge Smith, caused a certain apartment building consisting of four units to be purchased; title was placed in the name of Marge Smith's niece. The purchase price was thirteen thousand five hundred dollars ($13,500) and the mortgage amount was seven thousand two hundred fifty dollars ($7,250). Several months later, Morris Siegel requested of the said niece that a second deed be executed, without Marge Smith's knowledge, to the effect that Mrs. Smith was to be given a life estate with the remainder to revert to Morris Siegel upon Mrs. Smith's death. The niece agreed and a second deed was duly executed and recorded; it reads in pertinent part:
"To have and to hold all and singular the above described premises, together with the appurtenances and every part thereof, unto the said Marge M. Smith and her assigns for and during her natural life, and upon her death, then unto Morris Siegel, as Trustee."
After the death of Marge Smith and upon the administration of her estate, the second *73 deed, containing the above-quoted paragraph, was discovered. Since Morris Siegel and Nina Siegel had predeceased Marge Smith, their estates, rather than they themselves, claimed title by virtue of the said second deed based upon allegations of lack of evidence of any type of trust and the provisions of § 689.07, Florida Statutes (1977). The defendants/appellants, on the other hand, claimed title based upon the following theories: (a) a resulting trust established by the first deed to Marge Smith's niece and the apparent intent of the parties at that time; (b) a constructive trust to be imposed due to the "artifice and concealment" by which the second deed was executed; (c) construction of the quoted paragraph in the second deed which, under § 689.07, Florida Statutes (1977), deems it a mortgage due to the apparent lack of intention by Morris Siegel to retain an individual interest in the property; (d) adverse possession under color of title, pursuant to § 95.16, Florida Statutes (1977), upon the actions of Marge Smith as the holder of the property during her lifetime adversely to all others; and (3) the doctrine of laches.
A review of the record which includes the pleadings, transcripts of depositions (with particular attention to that of Marge Smith's niece), the parties' motions for summary judgment with accompanying memoranda of law, transcripts of proceedings, orders of the court and the briefs filed in the prosecution of this appeal, as well as research of the applicable principles of law reveal that there were no material issues of fact left unresolved. We have determined that the trial court carried out all its duties under Fla.R.Civ.P. 1.510, which states in pertinent part at (c):
"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
On the facts of this case, it is clear that a resulting trust could not have been created as appellants assert. Their specific contention is that a resulting trust was created in the passing of the first deed from the former owners to Marge Smith's niece, alleging that it was the intention of the parties that Marge Smith was to receive beneficial title to the subject property. However, Mrs. Smith did not pay for the property nor did she ever obligate herself to the grantor to pay for it. In Womack v. Madison Drug Company, 155 Fla. 335, 20 So.2d 256 (1944),[2] the court concisely stated that at 257:
"A resulting trust must arise if at all at the instant the deed is taken and legal title vests in grantee and the complaining party must have paid his share of the purchase price, or bound himself to grantor by an absolute obligation to pay it."
The record undisputably reflects that Morris Siegel financed the acquisition of the property, and the rental payments collected from the other apartment unit dwellers were used to make the mortgage payments.
Also a constructive trust could not have been found by the trial court, for the criteria for such were not established as is required. As stated in Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422 (1927):[3]
"A constructive trust is one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it ...
"[E]quity will raise a constructive trust and compel restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for *74 himself which in equity and good conscience he should not be permitted to hold."
There were no material facts in issue and certainly no facts to justify a finding of fraud, unjust enrichment or abuse of confidential relationship as required in order to impose a constructive trust. On its face the second deed shows that Morris Siegel intended to create a life estate in Marge Smith with the remainder to revert to him; this is clearly supported by the record, as there was sufficient, competent evidence before the court at the hearing on the motions to uphold the order. The claim of "artifice and concealment" is groundless in that what Marge Smith received, a life estate, was a "gift." It was entirely financed by the money and efforts of the donor, Morris Siegel, and no consideration whatsoever was provided by Mrs. Smith.
With regard to the previously-quoted paragraph contained in the second deed, § 689.07, Florida Statutes (1977) provides that if the word "trustee" is added to the name of the grantee, and there is no apparent trust purpose and no named beneficiary of the trust, the grantor is deemed to have granted a fee simple estate to the grantee. Clearly, when the deed is read in conjunction with the statute, a fee simple estate in favor of the appellees is evident. The holding in Arundel Debentures Corporation v. Le Blond, 139 Fla. 668, 190 So. 765 (1939), states that the reason why a grantee, as trustee, is entitled to fee simple title is in order to prevent a fraud from being perpetrated on a subsequent transferee who might rely on the record and be unaware of a secret trust creating ownership in another. By its holding the Arundel court explained the purpose of the statute, and provided no such exception as is claimed by the appellants  that is, where the "trustee" is the grantor.
Appellants also sought summary judgment in their favor on the basis that Marge Smith adversely possessed the property against Morris Siegel. Scott v. Fairlie, 81 Fla. 438, 89 So. 128 (Fla. 1921)[4] holds that in order for a life tenant to adversely hold a property against a remainderman, the life tenant would have to repudiate the life tenancy, the remainderman would have to have actual knowledge of this repudiation and the life tenant would have to claim title not as a life tenant but under different color of title. There had been no allegation nor evidence to the effect that Marge Smith repudiated the life tenancy. Although there was a mortgage refinancing of the property during Marge Smith's tenancy, a mortgage executed by a life tenant does not constitute a repudiation. See, Fairlie v. Scott, 88 Fla. 229, 102 So. 247 (1924), a subsequent holding in the same case cited earlier in this opinion. The trial court as a matter of law correctly denied appellants' motion for summary judgment on the claim of adverse possession.
Furthermore, appellants' argument that appellees should have been denied their right to sue based upon the doctrine of laches is vitiated because in order to show laches the appellants would have had to establish adverse possession, which was a legal impossibility under the instant facts. Additionally, we find the other points raised by appellants are without merit. Thus, as to the main appeal, we have determined that no reversible error has been demonstrated by appellants.
The error claimed by way of the cross-appeal, however, is well taken, and we find that reversal is required. The trial court had vacated that part of the final judgment dealing with the rights of the estate of Morris Siegel; the rationale was that dismissal of the cause was required due to lack of subject matter jurisdiction. Section 26.012, Florida Statutes (1977), provides the trial court with subject matter jurisdiction in all actions involving title and boundaries of real property. Appellants made the motion,[5] which on its face alleges *75 lack of subject matter jurisdiction, after final judgment, rather than prior to filing a responsive pleading (as required under Fla. R.Civ.P. 1.140). Accordingly, appellants waived the jurisdictional argument and the trial court erred in vacating the subject part of the final judgment. Also to be considered is the fact that in Shelby Mutual Insurance Co. of Shelby, Ohio v. Pearson, 236 So.2d 1 (Fla. 1970), the Florida Supreme Court held that the trial court loses jurisdiction to entertain a motion to dismiss for lack of subject matter jurisdiction when it is made after a denial of a motion for rehearing, as was the procedure followed in the trial court with this cause. Therefore, based upon either of the aforementioned grounds, reversible error has been demonstrated; that part of the final judgment relating to the point raised on cross appeal is reversed.
Accordingly, the order is affirmed in part, and reversed in part with directions to the trial court to, in effect, reinstate the former final judgment in favor of both the appellee-estates.
NOTES
[1] Marge Smith, believing that she was the fee simple title holder, had provided in her will that Antonia R. Turturro was to be the beneficiary of a life estate in the property with remainder interest to go to the Unity School of Christianity, upon Ms. Turturro's death.
[2] See also 33 Fla.Jur. Trusts § 52 et seq.; Martin v. Wilson, 115 So.2d 573 (Fla. 1st DCA 1959); Roberts v. Roberts, 133 So.2d 421 (Fla. 1st DCA 1961); Steele v. Lannon, 355 So.2d 190 (Fla. 2d DCA 1978).
[3] See certain of its progeny, Kramer v. Freedman, 272 So.2d 195 (Fla. 3d DCA 1973); L & N Grove, Inc. v. Chapman, 291 So.2d 217 (Fla. 2d DCA 1974); Reaves v. Hembree, 330 So.2d 747 (Fla. 1st DCA 1976).
[4] See 58 A.L.R.2d 305.
[5] The record reveals that although it appears that appellants' motion argued lack of subject matter jurisdiction, it was actually an argument asserting lack of in personam jurisdiction. See Rule 1.140(b) and (h).