48 So.2d 84 (1950)
STATE ex rel. WATSON
v.
GRAY, Secretary of State, et al.
Supreme Court of Florida, en Banc.
October 17, 1950.
*85 J. Tom Watson, in proper person, and Leo Stalnaker, Tampa, for appellant.
Richard W. Ervin, Attorney General, Howard S. Bailey, Fred M. Burns, Clyde Trammell, Jr., Assistant Attorneys General, for appellee.
CHAPMAN, Justice.
It appears by the record in this cause that Honorable J. Tom Watson, on June 20, 1950, filed in the Circuit Court of Leon County, Florida, his suggestion or petition for an alternative writ of mandamus against Honorable Robert A. Gray, Secretary of State, Honorable Richard W. Ervin, Attorney General, and Honorable Clarence M. Gay, State Comptroller, which officials compose the State Canvassing Board of Elections of the State of Florida. The relator alleged that he was a resident and qualified voter of Hillsborough County, Florida and a candidate for Congress from the First Congressional District of Florida, with others, in the Democratic Primaries held in said District on May 2nd and May 23rd, 1950. The Counties of Florida comprising the First Congressional District are viz.: Hardee, Hernando, Highlands, Hillsborough, Manatee, Pasco, Pinellas, Polk and Sarasota.
The relator represented that none of the candidates received a majority of the votes cast in the first primary but the State Canvassing Board, after canvassing the returns of the first primary, certified that Chester McMullen and your relator, J. Tom Watson, received the two largest number of votes and were each entitled to run as candidates in the second primary held on May 23, 1950. The votes cast in the second primary on May 23, 1950, in the nine counties comprising the First Congressional District are viz.:

"County McMullen Watson
 Hardee .............. 912 1,373
 Hernando ............ 884 567
 Highlands ........... 1,666 2,263
 Hillsborough ........ 17,667 18,530
 Manatee ............. 3,297 2,673
 Pasco ............... 3,330 1,600
 Pinellas ............ 19,296 4,036
 Polk ................ 8,391 7,345
 Sarasota ............ 2,387 1,934"

Chester B. McMullen received 57,830 votes and the relator Watson 40,321 at the Democratic Primary election held in said District on May 23, 1950. It was alleged that if the votes so cast in the District in the second Primary for the two candidates were legal then the said Chester B. McMullen was the Democratic nominee for the office and it became the duty of the respondents to certify him as such nominee. Relator alleged that the respondents were without lawful authority to certify the name of Chester B. McMullen as the Party nominee for the office because the votes cast in Pinellas County in the two Primary elections were invalid as they were conducted under the provisions of Chapter 24214, General Acts of 1947, Chapter 26154, Special Acts of 1949, and Chapter 26162, Special Acts of 1949, and each thereof is unconstitutional and void.
The petition alleged that Chapter 24214, General Acts of 1947, is unconstitutional and void for reasons: (1) it was enacted by the Legislature without the proper notice; (2) the Legislature was without the power to enact Special laws controlling elections; (3) it regulates elections but fails to regulate certain practices; (4) the authority granted by the terms of the Act to: (a) the registration officials; (b) the Board of County Commissioners of *86 Pinellas County; (c) the Supervisors of Registration; (d) purging the list of registered voters; (e) publication of notice of purging; (f) methods of procedure in sections of the county under the Act are different; (g) grants of power to officials with reference to registration, purging the list of voters, have the effect of disfranchising qualified voters of the county and in so doing is a denial of due process guaranteed by both the Federal and State Constitutions.
Chapter 26154, Special Acts of 1949, is invalid for the following reasons: (1) the practices legalized by the terms of the Special Act controlling elections are prohibited by our Constitution; (2) elections and election practices provided for in the Act violate the Constitution of Florida; (3) the changing of Party affiliations, prior to date of elections, is a special law applicable only to Pinellas County and violates our fundamental law.
Chapter 26162, Special Acts of 1949, relates to the purging of the qualified list of electors in Pinellas County. The Act provides the procedure therefor and outlined the duties of certain officials in relation thereto. Section One defines the official duties of the Supervisor of Registration and the Board of County Commissioners of Pinellas County with reference to the procedure of purging the list of electors and publishing the names so stricken from the list. Section Two provides that a list of the deaths of residents of Pinellas County be made to the officials of the county, as kept by officials operating the Bureau of Vital Statistics of Pinellas County. Other provisions are in the Act. For various reasons it is contended that the Act is void.
Paragraph 5 of the petition alleged that the State Canvassing Board counted and illegally included the entire vote cast in the County of Pinellas for candidate McMullen. It was the lawful duty of the respondent to exclude the votes cast in Pinellas County because the three Acts, supra, under which the voters of the county registered and cast their votes on May 23, 1950, were illegal because of their unconstitutionality. It is now the lawful duty of the Canvassing Board to exclude the votes cast in Pinellas County in the first primary for the office of Congressman from the First Congressional District. If the respondent Board observes its legal duty, it will reassemble and declare the relator Watson to be the candidate holding the highest number of votes cast in the first primary and Jerry Collins will be the candidate receiving the second highest vote cast in the first primary, and, since the second primary election was invalid, this Court should order and direct a proper runoff election, after excluding the Pinellas County vote, between the two highest candidates, to-wit, relator Watson and Collins.
The command of the alternative writ of mandamus is for the respondent Canvassing Board to reassemble and recanvass, recount and make a new return of all the votes from the several counties of the First Congressional District, except the votes canvassed and returned for the County of Pinellas. That an appropriate order be entered by the respondents to the effect that the election held in the District on May 23, 1950, was illegal and void. Exhibit "A" is the following affidavit of the relator, J. Tom Watson:
"State of Florida
"County of Hillsborough
"Before me, the undersigned authority, this day appeared J. Tom Watson, who, having been duly sworn, says that there are seventeen (17) cities in the County of Pinellas, which compiled the Pinellas County registration of electors used in the voting in that county in the May 2 and May 23, 1950 primary elections, and that these registrations were taken by city officials, who were not qualified county officials and who became registration officers solely by virtue of the provisions of law contained in the Act of the Legislature of Florida complained of in the suggestion for mandamus, to which this affidavit is attached, to-wit, Chapter 24214, General Acts of 1947, and Affiant makes this affidavit to be attached as an exhibit to such suggestion after having obtained the information here set forth *87 from the records, and personnel of the office of the Supervisor of Registration of Pinellas County.
"Affiant further says that more than 40,000 named registrants for voting were purged by striking said names from the registration records of Pinellas County during the year 1949; to-wit, in March and December thereof, by the Supervisor of Registration in said county, thus invalidating and nullifying said registration for voting purposes, all of which registrations were for the 1950 primary election described in the suggestion for mandamus, to which this affidavit is attached and made a part of. These purges, this affiant says, were utterly illegal and void and affected the election results in the contest and campaign complained of in the mandamus suggestion aforesaid."
Respondents through counsel filed their motions to quash the alternative writ of mandamus on various grounds and pertinent thereto are the following: (1) the relator is not entitled to the performance as prayed for; (2) the relator has not shown any clear legal right to the performance of the acts prayed for; (3) the relator is estopped to urge the questions sought to be raised in the alternative writ; (4) the relator is estopped to maintain this mandamus proceeding; (5) Sarasota, Polk, Pasco, Highlands and Hillsborough Counties each have registration Acts similar to Pinellas County; (6) notice as required by law was given of the intention to apply to the Legislature for the enactment of the three Acts here involved; (7) the relator was charged with knowledge of the three Acts prior to the primary elections; (8) the relator because of this knowledge is guilty of laches and now estopped from raising the constitutionality of the Acts; (9) the Supreme Court of Florida, on June 19, 1950, refused to issue an alternative writ of mandamus and therefore the issues presented in the case at bar are res adjudicata. The relator filed a motion for a peremptory writ of mandamus, the return to the alternative writ notwithstanding. The court below sustained the motion to quash the alternative writ and dismissed the action. The relator Watson appealed.
In a well prepared brief counsel for the relator contends that the three Acts, supra, applicable only to Pinellas County, are each invalid and unconstitutional. Numerous authorities are cited to sustain the conclusion of counsel to the effect that each of the three Acts violate and are in contravention of the following provisions of our organic law: Sections 1, 2, 3 and 9 of Article 6; Sections 20, 21 and 26 of Article 3; and Section 17 of the Declaration of Rights of the Constitution of Florida. Additional to the various constitutional questions presented here for adjudication, counsel pose two other pertinent questions: (1) "Does the record present any estoppel against the relator?" and (2) "Is the denial by the Supreme Court of its original jurisdiction in this case res adjudicata with respect to this appeal?" In questions 3, 4 and 5 respondents contend that the relator has not established a clear legal right to the relief sought  that he is not in a position for equitable reasons to raise the constitutionality of the three Acts, but, under the weight of the authorities, is now estopped from maintaining this suit on constitutional grounds.
Should this Court, in the consideration of this controversy, reach the conclusion that the relator, because of his conduct, is now estopped from asserting the constitutional invalidity of the three Acts applicable to Pinellas County, then all other questions posed for adjudication and elaborately and thoroughly briefed by counsel for the respective parties are not pertinent and each immediately becomes immaterial to the issues presented. We now return to relator's third question, viz.: Does the record present any estoppel against the relator?
It is settled law in this jurisdiction that the remedy of mandamus is not awarded as a matter of right but in the exercise of sound judicial discretion, and then only when based on equitable principles. It is never issued except on a showing of a clear legal right thereto. State ex rel. Norman v. Holmer, 160 Fla. 434, 35 So.2d 396. Pomeroy's Equity Jurisprudence, Vol. 3, par. 804, p. 189, defines estoppel thusly: "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in *88 equity, from asserting rights which perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy."
The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury. Coogler v. Rogers, 25 Fla. 853, 7 So. 391. The rule, supra, was applied by this Court in a Workmen's Compensation case where the claimant accepted benefits under the provisions of the Workmen's Compensation law but attempted to assert that a certain provision as to acceptance of notice of service of its provisions was unconstitutional and invalid. We held that the doctrine of estoppel applied and the claimant could not accept benefits flowing from the Act and simultaneously assert the constitutional invalidity of other provisions of the Workmen's Compensation law. See Lollie v. General American Tank Storage Terminals, 160 Fla. 208, 34 So.2d 306.
The record reflects that Collins, McDonald, McMullen, Watson and Wells, on May 2, 1950, submitted their respective candidacies for the office of Congressman for the First Congressional District to the electors of the several counties thereof, inclusive of Pinellas. It may be assumed that each candidate for this office solicited votes in the several counties of the District by contacting the voters, or by letters, telephone communications, radio addresses, newspaper advertisements, through workers interested in each candidacy, and by speeches by the candidates delivered in each county to the voters and otherwise. The constitutional invalidity of the three Acts applicable to Pinellas County was presented on June 20, 1950, some twenty-eight days after the date of the second primary. If the relator's contentions were here sustained, the electors of Pinellas County would be denied the right or privilege of voting for a representative in the Congress of the United States  the relator and Collins would be declared the candidates receiving the highest number of votes, contrary to the fundamental democratic doctrine of our majority rule.
It is pointed out that the relator by becoming a candidate for the office of Congressman, submitted his candidacy according to the rules of the Democratic Party in each county of the Congressional District. He never raised the constitutionality of the three Acts prior to or during the period he was seeking the nomination. He vigorously participated in each phase of the two primaries and filed this suit some 28 days after being defeated at the polls on May 23, 1950. It is contended that he cannot now be heard because of the doctrine of estoppel. The rules of the game usually are not changed while the players are on the field. It is the writer's view that the relator has had his three strikes at the ball, and, according to the rules of the game, the batter is out. See Buck v. Triplett, 159 Fla. 772, 32 So.2d 753.
It is our conclusion that the doctrine of estoppel is controlling and it therefore becomes unnecessary to consider other questions raised on this appeal.
Also it seems to us that the judgment should be affirmed on the further ground that the relator has failed to demonstrate that his rights have been so adversely affected by the alleged unconstitutionality of the acts assailed as to entitle him to mandamus.
Affirmed.
ADAMS, C.J., and THOMAS and SEBRING, JJ., concur.
TERRELL, J., concurs in conclusion.
HOBSON and ROBERTS, JJ., not participating.