SHAW, J.
We have for review S.A.P. v. State Department of Health & Rehabilitative Services, 704 So.2d 583 (Fla. 1st DCA 1997), wherein the district court certified the following question in an unpublished order:
Can the doctrine of fraudulent concealment apply to toll the statute of limitations in a negligence action?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer as explained herein.
I. FACTS
The facts concerning S.A.P.’s 1995 negligence claim against Florida Department of Health and Rehabilitative Services (“HRS” or the “department”) are set forth in the district court decision under review, which provides in relevant part:
S.A.P. appeals a final order which dismissed with prejudice her second amended complaint against appellee, State of Florida Department of Health and Rehabilitative Services (HRS), based on the application of the statute of limitations, section 768.28(12), Florida Statutes (1993). This section provides, with certain exceptions not applicable here, that a claim against the state must be brought within four years after such claim accrues....
[[Image here]]
S.A.P.’s complaint alleges that in 1979, when she was a four year-old child in foster care supervised by HRS, she was subjected to physical injury, including burns, beatings, and malnourishment, due to the negligent failure of HRS to supervise and monitor her foster care placement and to remove her from the care parent. Paragraph 13 of her complaint alleges:
The department, during the plaintiffs minority, actively concealed the facts concerning the negligence that is the basis of this complaint. Any records concerning the negligence complained of were, by Florida Statute and by the active efforts of the defendant, concealed from the public and those involved in the care of the plain *1094 tiff. The defendant department obstructed the law enforcement investigation of the abuse of the plaintiff and her sister in 1979....
[[Image here]]
We conclude that, based on the allegations of the complaint, S.A.P. has sufficiently stated both a cause of action for negligence and the equitable principle of fraudulent concealment.
S.A.P., 704 So.2d at 584-85.
The court held that the four-year limitation in section 768.28(12), Florida Statutes (1993),[1] was “tolled” by HRS’s conduct and ordered S.A.P.’s complaint reinstated:
S.A.P. argues, and we agree, that because her complaint sufficiently alleged factual bases for tolling the statute [of limitations], it cannot be said that the defense of the statute of limitations affirmatively appears on the face of the complaint. Accordingly, it was error to dismiss her complaint with prejudice and we reverse.
S.A.P., 704 So.2d at 584. The district court certified the above question.
S.A.P. contends that, in light of HRS’s allegedly fraudulent acts and its “active concealment” of those acts, the doctrine of equitable estoppel should bar the department from asserting a statute of limitations defense. “HRS should be barred by equitable estoppel from asserting the defense of the statute of limitations. This prohibition on the ability of HRS to articulate the defense is consistent with this Court’s reliance upon the principle that our courts will not protect defendants who are directly responsible for delays of filing because of their own willful acts.” We agree.
Because this case is before us on the trial court’s dismissal of S.A.P.’s second amended complaint, we must take all the factual allegations in her complaint as true and construe all reasonable inferences from those facts in her favor.[2] Our standard of review is de novo.[3] Several significant dates appear on the face of her complaint: S.A.P.’s abuse was first officially observed in 1979; HRS’s internal investigation report documenting the abuse was released on December 21, 1992; S.A.P. reached the age of majority on August 8, 1994; and the present action was filed in January 1995.
II. THE CONSTITUTIONAL AND STATUTORY SCHEMES
The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its own permission, has been a fundamental tenet of Anglo-American jurisprudence for centuries and is based on the principle that “the King can do no wrong.”[4] The doctrine was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature.[5]
Article X, section 13, Florida Constitution, however, provides that the Legislature can abrogate the State’s sovereign immunity:
*1095 SECTION 13. Suits against the state. — Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.
Art. X, § 13, Fla. Const. Pursuant to this provision, the Legislature enacted section 768.28, Florida Statutes (1973), which at the time .the present action was filed in 1995 provided as follows:
768.28 Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions.—
(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or of any of its agencies or subdivisions to recover damages in tort for money damages against the state or its- agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
§ 768.28, Fla. Stat. (1995) (emphasis added).
One of the key limitations specified in the act is spelled out in section 768.28(13) in the form of a four-year restriction placed on the filing of all tort claims under section 768.28:
(13) Every claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omission pursuant to this section shall be forever barred unless the civil action is commenced by filing a complaint in the court of appropriate jurisdiction within I years after such claim accrues; except that an action for contribution must be commenced within the limitations provided in s. 768.31(4), and an action for damages arising from medical malpractice must be commenced within the limitations for such an action in s. 95.11(4).
§ 768.28(13), Fla. Stat. (1995) (emphasis added). The Court has held that this restriction constitutes a statute of limitations, not a statute of repose.[6]
III. MAJOR LEAGUE BASEBALL v. MORSANI
This Court in Major League Baseball v. Morsani 790 So.2d 1071 (Fla.2001), addressed the question of whether the tolling proscription in section 95.051 applies to equitable estoppel.[7] There, Major League Baseball alleged that Morsani’s tort claim was barred by the statute of limitations *1096 and that Morsani could not assert the doctrine of equitable estoppel because the doctrine was excluded by section 95.051. This Court disagreed, concluded that the doctrines of tolling and equitable estoppel “are as different as apples and oranges,” and held that the tolling proscription in section 95.051 is inapplicable to equitable estoppel. In reaching this decision, the Court examined the principles underlying the statutes of limitation and equitable es-toppel.
A. Statutes of Limitation
Statutes of limitation, which impose a strict time limit on the filing of legal actions, were nonexistent at common law and instead are a creature of modern statutory law:
At common law, there were no fixed time limits for filing lawsuits. Rather, fixed limitations on actions are predicated on public policy and are a product of modern legislative, rather than judicial, processes. A prime purpose underlying statutes of limitation is to protect defendants from unfair surprise and stale claims:
“As a statute of [limitations], they afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses. Indeed, in such circumstances, the quest for truth might elude even the wisest court.”
Nardone v. Reynolds, 333 So.2d 25, 36 (Fla.1976) (quoting Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745, 752 (1968)).
Major League Baseball v. Morsani 790 So.2d 1071, 1074-75 (Fla.2001) (footnotes omitted). Time limitations on legal actions in Florida ordinarily are governed by the statutes of limitation set forth in chapter 95,[8] but as noted above, time limitations on chapter 768 actions are controlled by section 768.28(13).
B. Equitable Estoppel
The preclusive effect of the statutes of limitation can be deflected by various legal theories, including the doctrine of equitable estoppel. The Court described the contours of this doctrine:
The doctrine of equitable estoppel has been a fundamental tenet of Anglo-American jurisprudence for centuries:
“Estoppe,” says Lord Coke, “cometh of the French word estoupe, from whence the English word stopped; and it is called an estoppel or conclusion, because a man’s own act or acceptance stoppeth or closeth up his mouth to allege or plead [otherwise].”
Lancelot Feilding Everest, Everest and Strode’s Law of Estoppel 1 (3d ed.1923). The doctrine, which was part of the English common law when the State of Florida was founded, was adopted and codified by the Florida Legislature in 1829.
Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position:
“Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, *1097 either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy.”
The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.
State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla.1950) (quoting 3 Pomeroy’s Equity Jurisprudence § 804 (5th ed.1941)).
Major League Baseball, 790 So.2d at 1076 (footnote omitted).
Equitable estoppel differs from other legal theories that may operate upon the statutes of limitation in that equitable estoppel presupposes an act of wrongdoing — such as fraud and concealment — that prejudices a party’s case:
Equitable estoppel presupposes a legal shortcoming in a party’s case that is directly attributable to the opposing party’s misconduct. The doctrine bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct. Equitable estoppel thus functions as a shield, not a sword, and operates against the wrongdoer, not the victim. This Court has applied the doctrine for more than a century and a half.
Major League Baseball, 790 So.2d at 1077.
IV. EQUITABLE ESTOPPEL vs. SECTION 768.28(13)
It is well settled in Florida and other jurisdictions that the statutes of limitation can be deflected by the doctrine of equitable estoppel.[9] This proposition is supported by vast precedent from this Court,[10] Florida district courts of appeal,[11] *1098 and federal courts.[12] HRS asserts that, despite this precedent, the statute of limitations in section 768.28(13) is somehow different from all other statutes of limitation in that it applies only to suits filed against the State as opposed to private persons. We find this claim disingenuous in light of the plain language of section 768.28(1), which provides that the State consents to be sued “in accordance with the general laws of this state” for any tort in which “a private person would be liable to the claimant.” This consent, we conclude, evinces an unequivocal intent on the part of the State to abide by the traditional laws — including the equitable canons— governing tort actions in any claim filed under section 768.28.
This conclusion is borne out by several considerations. First, equitable estoppel is a basic tenet of the common law[13] and any statute enacted in derogation of the common law — such as a statute of limitations — must expressly so provide:
[A]s noted above, equitable estoppel is a deeply rooted, centuries old tenet of the common law. On the other hand, fixed time limitations for filing suit, i.e., statutes of limitation, were unknown at common law and are a creature of modern statute. This Court has held that a statute enacted in derogation of the common law must be strictly construed and that, even where the Legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise:
The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard. Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.
Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla.1990).
Major League Baseball, 790 So.2d at 1077-78 (footnote omitted). In the present case, not only does the plain language of section 768.28(13) not expressly change the common law doctrine of equitable estoppel, it does not mention or allude to that doctrine.
And second, the basic purposes served by the statute of limitations and the doctrine of equitable estoppel are in harmony.
[T]he fundamental purposes served by the statute of limitations and the doc *1099 trine of equitable estoppel are congruent. As noted above, a main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims. A prime purpose of the doctrine of equitable estoppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant’s own actions are responsible for the tardiness of the filing.
Major League Baseball, 790 So.2d at 1078 (footnote omitted). In the present case, section 768.28(13) and the doctrine of equitable estoppel work hand in hand to achieve a common goal — the preservation of a viable and fair legal system.
V. S.A.P.’s COMPLAINT
S.A.P. alleged in her complaint that the department was negligent in the following ways: in failing to adequately supervise and monitor the placement of S.A.P.; in failing to adequately supervise the activities of its caseworker, Ms. Dassie; in failing to remove S.A.P. from the home of C.C. when the department knew or should have known that S.A.P. and her sister were being abused by C.C.; and in falsifying and altering records of her foster care in C.C.’s home and in allowing those records to remain in her official file. S.A.P. also alleged that the department “actively concealed the facts concerning the negligence that is the basis of this complaint” and “obstructed the law enforcement investigation of the abuse of the plaintiff and her sister.”
S.A.P. stated several specific claims in paragraph 13 of her second amended complaint:
(13) The department, during the plaintiffs minority, actively concealed the facts concerning the negligence that is the basis for this complaint. Any records concerning the negligence complained of were, by Florida Statute and by the active efforts of the defendant concealed from the public and those involved in the care of the plaintiff. The department obstructed the law enforcement investigation of the abuse of the plaintiff and her sister in 1979. In the report of the internal investigation conducted by the Defendant and released on December 21, 1992, it was first revealed that law enforcement officials alleged that employees of the defendant obstructed the criminal investigation of the 1979 abuse and neglect of the plaintiff. The department’s own internal investigation, reported on December 21, 1992, also revealed for the first time that the case worker charged with the duty to supervise the placement of the plaintiff and her sister falsified records so that it appeared that the case worker had conducted monthly supervision visits with the plaintiff and her sister. The records reveal that the foster home was frequently visited and that S.A.P. and her sister were doing fine. Had any interested adult examined these records prior to December 21, 1992, they would have been misled into believing that the department had reasonably, appropriately, and lawfully discharged its supervision duties. The negligence of the Department was concealed by these falsified records.
In paragraph of 17 of her complaint, S.A.P. explained that she had no active memory of the abuse until she became a young adult:
(17) Throughout the course of her childhood, the plaintiff had little or no actual memory of the incidents which serve as the subject of this complaint. She was only three and barely four years old at the time of the incidents which serve as the basis for this claim. In addition, the trauma and abuse which she endured caused her to lose any ac *1100 tive memory of the incidents in question. Her loss of memory is confirmed by her treating counselor who, in treatment with the plaintiff from 1992 to 1993 (when the plaintiff was 17 years of age), verified that the plaintiff, at that time, had no active memory of these incidents. Of course, the plaintiff had no memory or knowledge whatsoever concerning the negligence that forms the basis of this complaint and the failure of the department to properly supervise her at age three and four.
Additionally, S.A.P. alleged other acts of wrongdoing by the department, including a claim that “[t]he records of the facts underlying this cause of action ... had been altered.”
VI. CONCLUSION
If we, as we must, take the factual allegations in S.A.P.’s second amended complaint as true and construe all reasonable inferences therefrom in her favor, we conclude that the doctrine of equitable estop-pel bars HRS from asserting that the complaint was untimely filed. Section 768.28(13) is a conventional statute of limitations, nothing more; it is not a statute of repose that forecloses all forms of equitable relief. The law of this State does not bestow upon the department a special boon to betray the children in its charge, to flagrantly flout the law, to conceal its misdeeds, and then to invoke section 768.28(13) as a shield for its actions.
S.A.P.’s complaint alleged serious acts of sustained, long-term child abuse that the department negligently overlooked in contravention of its supervisory responsibility:
On or about October 20, 1979, the Clay County Sheriffs Office responded to reports from neighbors that they had heard the cries of young children and screaming emanating from a residence. They found S.A.P. and her younger sister, J.M.P., bruised over their entire bodies, burned, beaten, choked, malnourished, and suffering from other injuries at a residence in Orange Park, Florida. At the time of the discovery of the children, S.A.P., then age 4, weighed 22 pounds and was “very emaciated” according to medical records. The children were not residing at the proper foster home location.
The complaint further alleged that, after the abuse was uncovered by police, HRS then “obstructed” the police investigation, “falsified” reports, “altered” records, and otherwise “actively concealed” the abuse. To allow the department to do as alleged— i.e., to negligently supervise and monitor S.A.P.’s placement, to conceal the resulting abuse for years, and then to invoke the statute of limitations to escape liability— would violate the basic principles underlying chapter 768 and make a mockery of section 768.28(13).
Notably, we do not pass on the factual development of this issue at trial; our review is limited solely to the allegations contained in the complaint. We do not address the question of whether any other considerations may operate to restrict the use of equitable estoppel in this case; nor do we comment on the merits of the underlying cause of action. We answer the certified question narrowly as explained herein, approve the ruling of the district court to the extent it is consistent with this decision, and remand for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and PARIENTE and QUINCE, JJ., concur.
LEWIS, J., concurs specially with an opinion, in which ANSTEAD, C.J., and PARIENTE, J., concur.
*1101 WELLS, J., dissents with an opinion, in which HARDING, Senior Justice, concurs.
HARDING, Senior Justice, dissents with an opinion, in which WELLS, J., concurs.

. Section 768.28(12) subsequently was renumbered section 768.28(13). See § 768.28(13), Fla. Stat. (1995).

. See, e.g., Ralph v. City of Daytona Beach, 471 So.2d 1, 2 (Fla.1983) ("For the purposes of a motion to dismiss ... allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff.”).

. See, e.g., Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 583 (Fla.2000) ("A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review.”).

. See Glassman v. Glassman, 309 N.Y. 436, 131 N.E.2d 721 (1956).

. See generally § 2.01, Fla. Stat. (1995).

. See Public Health Trust v. Menendez, 584 So.2d 567, 569 (Fla.1991) ("The fact that [section 768.28(13)] provides a statute of limitation but not a statute of repose thus means that no repose period was intended."); Beard v. Hambrick, 396 So.2d 708, 712 (Fla. 1981) (holding that "the four-year statute of limitations" contained in current section 768.28(13) applies to all section 768.28 actions); see generally Kush v. Lloyd, 616 So.2d 415, 418 (Fla.1992) ("A statute of limitation begins to run upon the accrual of a cause of action.... On the other hand, a statute of repose, which is usually longer in length, runs from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued.”)

. Section 95.051 sets forth an exclusive list of conditions that can "toll” the running of the statute of limitations; the section states that no other condition can toll the statute of limitations. The list does not mention equitable estoppel. See § 95.051, Fla. Stat. (1995).

. See § 95.11, Fla. Stat (1995).

. See Major League Baseball, 790 So.2d at 1078.

. See, e.g., Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447, 449 (Fla.1986) ("[J]ustice requires us to hold that section 733.702 is a statute of limitations. Valid grounds, such as estoppel or fraud, may exist that would and should excuse untimely claims.”); Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9, 13 (Fla.1965) (“If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of the notice may be said to arise.”).

. See, e.g., Baptist Hosp. of Miami, Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3rd DCA 1995) ("It is well settled ... as a general rule ... that fraud or misrepresentation which misleads a claimant into a justified failure to assert his rights bars reliance on a statute of limitations.”); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992) ("A party will be estopped from asserting the statute of limitations defense to an admittedly untimely action where his conduct has induced another into forbearing suit within the applicable limitations period.”); Jaszay v. H.B. Corp., 598 So.2d 112, 113 (Fla. 4th DCA 1992) (“The appellee is estopped from asserting the limitations defense because it stipulated to a sixty-day extension of the pre-suit screening period....”); Glantzis v. State Auto. Mut. Ins. Co., 573 So.2d 1049, 1050 (Fla. 4th DCA 1991) (“[W]e believe the evidence is such that the doctrine of equitable estoppel applies preventing State Auto from resorting to the statute of limitations as a defense.”); Olenek v. Bennett, 537 So.2d 160, 161 (Fla. 5th DCA 1989) ("Fairness and equity dictate that the estate is estopped from raising the statute [of limitations] as a defense.”); Martin v. Monroe County, 518 So.2d 934, 935 (Fla. 3rd DCA 1987) (“We hold that when the [department] acknowledges, that within the statute of limitations, an accident report of a claim was filed ... it is thereafter estopped after the expiration of the statute of limitations to deny receipt of the claim.”); City of Brooksville v. Hernando County, 424 So.2d 846, 848 (Fla. 5th DCA 1982) (“While *1098 continuing negotiations regarding settlement do not 'toll’ the running of a statute of limitation, such negotiations, if infected with an element of deception, may create an estoppel. This is true even subsequent to the 1975 enactment of subsection (2) of section 95.051 which states that 'no disability or other reason shall toll the running of any statute of limitations except those specified in this section.’ ” (footnote and citation omitted)); Cape Cave Corp. v. Lowe, 411 So.2d 887, 889 (Fla. 2nd DCA 1982) ("[A] defendant may by its actions become estopped from claiming the benefit of a statute of limitations.”); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3rd DCA 1979) ("There can be no doubt that one may in fact be estopped from claiming the benefit of the statute of limitations.”); J.A. Cantor Assoc. v. Brenner, 363 So.2d 204, 205 (Fla. 3rd DCA 1978) (“Concerning the statute of limitations, the record shows evidence which, if believed by the jury, would support a jury finding that ... the appellant made fraudulent representations ... so that the appellee was misled....”).

. See, e.g., Cange v. Stotler & Co., 913 F.2d 1204, 1209 (7th Cir.1990); Cook v. Deltona Corp., 753 F.2d 1552, 1562-63 (11th Cir.1985); Darms v. McCulloch Oil Corp., 720 F.2d 490, 494 (8th Cir. 1983); Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1043 n. 7 (10th Cir.1980).

. See generally Soud v. Hike, 56 So.2d 462, 466 (Fla.1952) ("By judicial construction [the common law] also includes the substantive principles of equity as well as those of law.”).