CANTERO, J.,
dissenting.
I dissent from discharging jurisdiction in this case because I conclude that the district court’s decision conflicts with a decision of this Court, and we should clarify the law. The principal issue is whether the doctrine of equitable estoppel applies where the plaintiff did not know about the cause of action until the statute of limitations expired. The district court held that in such circumstances the doctrine of equitable estoppel does not apply. See Ryan v. Lobo de Gonzalez, 841 So.2d 510 (Fla. 4th DCA 2003). As I explain below, the district court’s decision technically conflicts with language in our decision in Florida Department of Health & Rehabilitative Services v. S.A.P., 835 So.2d 1091 (Fla.2002). In S.A.P., we allowed the
*573 plaintiff, who had been sexually abused as a child, to assert a claim for equitable estoppel even though she did not learn of the cause of action until after the limitations period expired. We therefore have jurisdiction. See art. V, § 3(b)(3), Fla. Const. But I also agree with the district court that our decision in SAP. did not intend to announce a broad ruling modifying the traditional requirements for equitable estoppel. Rather, like other cases we recently have decided, it created an exception to the previous knowledge requirement in childhood sexual abuse cases. I would use this opportunity to approve the district court’s interpretation of S.A.P., and in particular Judge Gross’s thoughtful concurring opinion explaining the history of the doctrine of equitable estoppel. Finally — and the reason why accepting jurisdiction is important — I would quash the district court’s decision to the extent it holds that the statute of limitations bars all of the plaintiffs’ causes of action. I conclude that although the statute of limitations does bar some claims, it does not bar those for constructive trust, declaratory judgment, and permanent injunction. The Court’s decision to discharge jurisdiction leaves the plaintiffs completely without a remedy.
I. FACTUAL AND PROCEDURAL BACKGROUND
This case arises from a complex set of facts, most of which remain disputed at this point, involving claims among relatives to shares of the Chiriqui Sugar Mills Corporation, a Panama corporation with holdings in Cuba. The facts are set forth in greater detail in the district court’s opinion. See Ryan, 841 So.2d at 510. I briefly summarize them. The claims are between one daughter of Julio Lobo Olabarria, deceased, who at one time owned Chiriqui, and the children of another daughter. The daughters are Leonor Lobo de Gonzalez and Maria Luisa Lobo Ryan. Leonor claims she owns the shares, while Maria Luisa’s four surviving children — John Ryan IV, Victoria Ryan, Carolina Ryan Camperio and Alin Ryan Smith — claim they do.
Julio Lobo formed Chiriqui in 1957. He later used the shares as collateral for a loan. Lobo’s properties were among many that Cuba’s dictator Fidel Castro confiscated and nationalized. Lobo thereafter defaulted on the loan, but in 1963 he renegotiated it. The new loan provided that a company called Moorings Development Company would assume some of Chiriqui’s debt. Although Lobo controlled Moorings, it was owned in equal shares by his two daughters. Lobo defaulted on the renegotiated loan in 1965, and Moorings seized and assumed control of Chiriqui. See id. However, this seizure and assumption of control was never formally or officially recorded in Panama, nor were the Chiriqui shares listed in the Moorings financial statements or tax returns.
In 1967, Moorings began to operate independently of Lobo, and in 1971, Lobo discussed with his attorneys the possibility of reacquiring the Chiriqui shares and control of Moorings; however, neither control nor the shares were returned to him. In 1974, he indicated in a letter to his attorneys that he no longer wished to pursue his rights in the Moorings or the Chiriqui shares, citing fears that the IRS would seize any property obtained through enforcement of his rights. In addition, he expressed a desire to make amends with his daughters.
In 1980, Maria Luisa redeemed her 50% interest in Moorings. The parties dispute whether Chiriqui was an asset of Moorings at that time, and whether the Chiriqui shares were a part of the redemption so as to foreclose Maria Luisa from later claim *574 ing ownership of the shares. Lobo died in 1983 without having pursued any potential interest in Moorings or in the Chiriqui shares. See id. In 1984, Leonor sold her interest in Moorings. Before the sale, however, she removed the Chiriqui shares from Moorings’s safety deposit box.
In 1991, John Ryan, one of Maria Luisa’s sons, investigated Lobo’s assets and became aware of the Chiriqui shares. At that time, Leonor made statements indicating that she and Maria Luisa owned the shares equally. In 1996, however, Leonor filed a document with the Panama Corporation Registry claiming to be Chiriqui’s sole owner, and later transferred her interest in Chiriqui to a Florida corporation.
Maria Luisa’s children allege that not until April 1996 did they become aware that Leonor claimed sole ownership of the shares. Maria Luisa died in February 1998, and that December Maria Luisa’s children and her estate filed suit against Leonor and her husband Jorge alleging entitlement to Maria Luisa’s half interest in the Chiriqui shares. See id. They allege that when Maria Luisa redeemed her Moorings interest she had not forfeited her interest in the shares because she was not aware the shares were a Moorings asset. The children’s second amended complaint asserted claims to the shares by the children, as Maria Luisa’s assignees, and by Julio Lobo’s estate.
The trial court granted a final summary judgment in favor of Leonor and her husband, concluding that the statute of limitations barred the children’s claims, and that equitable estoppel was not available as a means to avoid the defense of the statute of limitations.
The Fourth District Court of Appeal affirmed. 841 So.2d at 520. The district court held that, because Maria Luisa was not aware of her right to a cause of action to recover the shares before the limitations period expired, Leonor could not have enticed her into delaying the filing of an action, and therefore she could not invoke the doctrine of equitable estoppel. See id.
II. DISCUSSION OF LAW
The children seek review based on express and direct conflict with S.A.P., 835 So.2d at 1091. In the alternative, they argue that the statute of limitations does not bar their claims because the claims did not accrue until 1996, when Leonor first asserted full ownership of the Chiriqui shares. I address these arguments in turn. Below I analyze three issues: (A) whether jurisdiction exists based on express and direct conflict; (B) whether the doctrine of equitable estoppel applies under the facts of this case; and (C) whether, even if the doctrine does not apply, the statute of limitations bars all of the plaintiffs’ claims.
A. CONFLICT WITH S.A.P.
Despite the district court’s valiant efforts to distinguish our decision in S.A.P., 835 So.2d at 1091, I conclude that its decision expressly and directly conflicts with that case. In S.A.P., we allowed the plaintiff, who had been sexually abused as a child, to assert a claim for equitable estop-pel even though she did not learn of the cause of action until after the limitations period expired. The district court in this case held that the doctrine of equitable estoppel does not apply where the plaintiff did not know of the cause of action before the limitations period expired. That holding conflicts with S.A.P. As the concurring opinion below recognized, “one reading of S.A.P. suggests a much broader application of the doctrine of equitable estoppel to give life to causes of action which would otherwise be swatted away by the statute of limitations.” 841 So.2d at 523 (Gross, J., concurring specially). We should ac *575 cept jurisdiction for two reasons: to clarify that S.A.P. does not apply in these circumstances, but is limited to cases involving childhood sexual abuse; and to hold that, notwithstanding the inapplicability of the doctrine of equitable estoppel, the statute of limitations had not expired on three of the plaintiffs’ claims when they filed the complaint.
B. S.A.P. Does not Apply in These Circumstances
I would clarify that the doctrine of equitable estoppel does not apply in these circumstances. Although the plaintiffs rely on S.AP., that case involved the unique considerations of childhood sexual abuse. As Judge Gross noted below, it is not “an extension of the law [of equitable estop-pel], but a case that is limited to the unique cause of action there at issue.” Ryan, 841 So.2d at 525 (Gross, J., concurring specially). This case presents no such special circumstances or concerns.
The doctrine of equitable estoppel applies “in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.” Major League Baseball v. Morsani 790 So.2d 1071, 1076 (Fla.2001) (quoting State ex rel. Watson v. Gray, 48 So.2d 84, 87-88 (Fla.1950)). We have consistently applied the doctrine to avoid a statute of limitations defense where the parties recognized the basis for the suit but the defendant caused the plaintiff to forebear from acting during the limitations period. In Morsani, for example, the plaintiffs acknowledged that the statute of limitations had expired before they filed suit, but argued that the defendants should be estopped from asserting such a defense because they induced the plaintiffs to forebear filing suit. Id. at 1073. We held that section 95.051, Florida Statutes (1993), which delineates the circumstances that can “toll” the statute of limitations, did not abrogate the doctrine of equitable estoppel, and that such a defense was available. Id. at 1080. We quoted the longstanding definition of equitable estoppel, id. at 1076, and cited several Florida and federal cases that “have approved equitable estoppel as a bar to the statute of limitations.” Id. at 1078-80 & nn. 21-22. Every one of the cases cited (discussed below) involved plaintiffs who knew of the cause of action but had been induced to forebear from filing suit. We also quoted with approval the following language from a federal case:
Equitable estoppel ... comes into play only after the statute of limitations has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forebearing suit within the applicable limitations period.
Bomba v. W.L. Belvidere, Inc., 579 F.2d 1067, 1070 (7th Cir.1978) (emphasis added), quoted in Morsani, 790 So.2d at 1079. We therefore intended in Morsani that a plaintiff asserting the doctrine would have prior knowledge of the cause of action.
Other cases from this Court discussing the doctrine also involved plaintiffs with prior knowledge of their claims. See Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447, 449 (Fla.1986) (where the decedent’s estate induced the bank not to file a formal claim but later invoked the statute of limitations when the bank brought proceedings to collect, noting that “[v]alid grounds, such as estoppel or fraud, may exist that would and should excuse untimely claims”); Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9, 11-12 (Fla.1965) (holding that a municipality was estopped from asserting a statutory *576 notice requirement on tort claims where municipal agents misled the injured parties into not filing). In fact, until SAP., every case from this Court considering equitable estoppel as an avoidance of the statute of limitations involved plaintiffs that recognized the basis for the suit during the limitations period.
The law in the district courts of appeal, on which we relied in both Morsani and S.A.P., has been identical. Every case that has applied the doctrine to avoid a statute of limitations defense involved plaintiffs who knew of their cause of action and were induced to forebear from filing suit. See Baptist Hosp. of Miami, Inc. v. Carter, 658 So.2d 560, 562-63 (Fla. 3d DCA 1995) (finding a triable issue as to the estate’s estoppel to claim the limitations defense where the decedent’s surviv- or actively misled a hospital into believing that the decedent left no estate from which to collect outstanding bills), abrogated by May v. Illinois Nat’l Ins. Co., 771 So.2d 1143 (Fla.2000); Alachua County v. Cheshire, 603 So.2d 1334, 1337 (Fla. 1st DCA 1992) (applying equitable estoppel where the federal government, by continual assurances of payment, induced the plaintiff not to sue on a lien against government-seized property within the limitations period); Jaszay v. H.B. Corp., 598 So.2d 112, 113 (Fla. 4th DCA 1992) (estopping a defendant from asserting a statute of limitations defense because it had stipulated to a sixty-day extension of the presuit screening period); Glantzis v. State Auto. Mut. Ins. Co., 573 So.2d 1049, 1051 (Fla. 4th DCA 1991) (“Having lulled appellants into this false sense of security, no fairminded person could condone abandoning the arbitration and invoking the statute of limitations. That would seem to be ‘gotcha’ practice at its best.”); Olenek v. Bennett, 537 So.2d 160, 161 (Fla. 5th DCA 1989) (applying the doctrine against an estate where the attorney for the estate “accepted service of the complaint, after the substitution of the estate for the now-deceased defendant, and agreed to file an answer”); Martin v. Monroe County, 518 So.2d 934, 935 (Fla. 3d DCA 1987) (holding that when the Department of Insurance acknowledged that it had received “an accident report of a claim [within the statute of limitations] ..., it [was] thereafter es-topped after the expiration of the statute of limitations to deny receipt of the claim”); City of Brooksville v. Hernando County, 424 So.2d 846, 848 (Fla. 5th DCA 1982) (holding that continuing settlement negotiations, “if infected with an element of deception, may create an estoppel”); Cape Cave Corp. v. Lowe, 411 So.2d 887, 888-89 (Fla. 2d DCA 1982) (holding that the property appraiser was estopped from asserting the statute of limitations where the failure to bring the action within the limitations period was the direct result of the property appraiser’s failure “to timely perform a related duty owed to [plaintiff]”); Salcedo v. Ass’n Cubana, Inc., 368 So.2d 1337, 1339 (Fla. 3d DCA 1979) (where the defendant attempted to assert the statute of limitations after taking inconsistent legal positions in two separate proceedings arising from the same claim, holding that “courts will not allow the practice of the ‘Catch-22’ or ‘gotcha!’ school of litigation to succeed”).
3. SAP.
Against this background, we decided SAP. As previously noted, SAP. involved childhood sexual abuse. The complaint alleged that the Department of Health and Rehabilitative Services negligently supervised the plaintiffs foster care and, as a result, the plaintiff suffered long term sexual abuse. See 835 So.2d at 1100. It further alleged that, to prevent both the plaintiff and the public from discovering the abuse, HRS actively hindered a police *577 investigation, actively concealed the abuse, and falsified records. Id. at 1099-1100. According to the complaint, the plaintiff “had little or no actual memory of the incidents which serve as the basis for th[e] complaint. She was only three and barely four years old at the time of the incidents.” Id. at 1099.
I do not believe that we intended in S.A.P. to extend the doctrine beyond its historical use. Several facts in S.AP. render that case unique. The plaintiff was in foster care. She was, at most, four years old when the abuse occurred. The statute of limitations expired when she was eight. No facts suggest that she had parents or other guardians who could file a cause of action in her behalf. The only possible plaintiffs were the foster parents, who committed the abuse, and the state, which was in a fiduciary relationship to the plaintiff and was supposed to supervise the foster parents. Instead, it actively concealed the abuse and in fact (according to the complaint) falsified records.
We also answered the certified question in S.A.P. “narrowly.” Id. at 1100.[1] We did not claim that we were modifying the doctrine of equitable estoppel. We simply determined that, where a four-year-old child was sexually abused by foster parents; where the state actively concealed the abuse, obstructed a police investigation, and falsified records; and where the plaintiff filed suit within three years after the release of documents admitting the abuse, the doctrine of equitable estoppel prevented the state from asserting a statute of limitations defense. We did not hold that, in all cases where a plaintiff asserts equitable estoppel to avoid the statute of limitations, prior knowledge of the cause of action is no longer required. Without an explicit recognition that we were modifying the doctrine, we can only interpret the case as creating the same exception to the doctrine for childhood sexual abuse cases that other jurisdictions have created.[2]
Finally, as Judge Gross noted below, see Ryan, 841 So.2d at 524 (Gross, J., concurring specially), all of the cases cited in S.A.P. involve plaintiffs who were aware of a cause of action during the limitations period. In S.A.P., we cited several district court cases applying the doctrine of equitable estoppel. 835 So.2d at 1097 n. 11. These were the very same cases we cited in Morsani, see 790 So.2d at 1078 n. 21, also discussed above. We also cited federal cases on the issue. S.A.P., 835 So.2d at 1098 n. 12. Again, these were the same federal decisions cited in Morsani. See 790 So.2d at 1080 n. 22. For example, we cited Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036 (10th Cir.1980). In that case, the court described equitable estoppel as arising “where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed.” Id. at 1043 n. 7. Therefore, although given its unique facts, the result in S.A.P. deviated from the uniform law of equitable estoppel, the foundations of that *578 opinion were deeply rooted in, and in fact appeared to respect, that uniform law. In S.AP. we simply created an exception to the doctrine for childhood sexual abuse, as we have done in other areas. Compare Hearndon v. Graham, 767 So.2d 1179, 1186 (Fla.2000) (holding that the delayed discovery doctrine applies in situations involving “childhood sexual abuse accompanied by traumatic amnesia”), with Davis v. Monahan, 832 So.2d 708, 712 (Fla.2002) (recognizing that Heamdon only created an exception to the statutory limitations on the delayed discovery doctrine, and citing “the unique and sinister nature of childhood sexual abuse” to hold that “Heam-don is limited to the specific facts in that case”).[3]
C. The Statute of Limitations
While I agree with the district court that S.A.P. does not apply in these circumstances, I also conclude that the statute of limitations has not expired on several of the children’s claims because those causes of action did not accrue until 1996. The statute of limitations does, however, bar all claims made by the estate of Julio Lobo.
The statute of limitations had not expired on the children’s claim for constructive trust. The imposition of a constructive trust requires: “(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment.” Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1026 (Fla. 4th DCA 1996). The limitations period is four years. § 95.11(3)(j), Fla. Stat. (2004). The children argue that no cause for a constructive trust arose until 1996, when Leonor filed a document with the Panama Registry claiming, apparently for the first time, 100% ownership of the Chiriqui shares. According to its tax returns and financial statements, Moorings did not treat the Chiriqui stock as an asset at the time of Maria Luisa’s redemption of her 50% interest in Moorings or at any time thereafter. In her deposition, Leonor admits she made public statements in early 1996 that she owned 50% of the Chiriqui shares and that her sister owned the other 50%. She made this statement before the 1996 filing of the Chiriqui shares with the Panama Registry and after Maria Luisa’s redemption of her interest in Moorings. These facts show that any breach of trust and unjust enrichment would have occurred in 1996 when Leonor first asserted 100% ownership of the Chiriqui stock.
A constructive trust has been described as “one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.” Turturro v. Schmier, 374 So.2d 71, 73 (Fla. 1st DCA 1979) (quoting Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422 (1927)). If Leonor did indeed commit a fraud, she would have done so in 1996 when she filed the shares with the Panama Registry. Before then, all parties behaved as if Leonor and Maria Luisa owned the shares jointly. Therefore, a cause of action for constructive trust would only have been available after the filing of the shares in 1996.
The statute of limitations also had not expired on the children’s claim for declaratory judgment. Chapter 86, Florida Statutes (2004), grants courts the power to declare judgments as to “rights, status, and other equitable or legal relations.” § 86.011. A declaratory judgment requires *579 a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.
Dep’t of Revenue v. Kuhnlein, 646 So.2d 717, 721 (Fla.1994) (quoting May v. Holley, 59 So.2d 636, 639 (Fla.1952)). According to the complaint, Leonor and Maria Luisa did not dispute the ownership of the Chiri-qui shares until 1996, when Leonor first asserted she owned it all. That assertion is what created a “bona fide, actual, present practical need for the declaration.” Id. Therefore, the cause of action for declaratory judgment accrued in 1996.
Finally, the statute of limitations also had not expired on the children’s claim for an injunction. In seeking a permanent injunction, a party “must demonstrate a clear legal right, the inadequacy of a remedy at law, and that an irreparable injury will occur if such relief is not granted.” E. Fed. Corp. v. State Office Supply Co., 646 So.2d 737, 741 (Fla. 1st DCA 1994) (citing Leon County Classroom Teachers Ass’n v. School Board of Leon County, 363 So.2d 353, 355 (Fla. 1st DCA 1978)). Irreparable harm could not exist until there was an actual threat to Maria Luisa’s interest in the Chiriqui shares. Before 1996, no such threat existed. Therefore, Maria Luisa could not demonstrate a likelihood of irreparable harm. The cause of action on this claim did not accrue until 1996.
III. CONCLUSION
I conclude that the district court’s decision conflicts with S.A.P. and that we should resolve the conflict. We should reaffirm the doctrine of equitable estoppel and hold that, absent the special circumstances involving childhood sexual abuse, a plaintiff seeking to avoid a statute of limitations defense must have known about the existence of the cause of action before the limitations period expired and must have been induced to forebear from filing suit. Therefore, the plaintiffs in this case cannot assert equitable estoppel to avoid the statute of limitations. However, I would quash the district court’s decision to the extent that it held all of the children’s causes of action barred by the statute of limitations. Their causes of action for constructive trust, declaratory judgment, and injunction remain viable. I would therefore remand for further proceedings consistent with this opinion.
For these reasons, I respectfully dissent from this Court’s decision to discharge jurisdiction.

. The district court certified the following question: "Can the doctrine of fraudulent concealment apply to toll the statute of limitations in a negligence action?” 835 So.2d at 1093.

. See Fager v. Hundt, 610 N.E.2d 246, 251 (Ind.1993) (creating an exception where the plaintiff suffered repressed memories as a result of childhood sexual abuse from a parent and holding that “the doctrine of fraudulent concealment should be available to estop a defendant from asserting the statute of limitations when he has, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action”).

. We decided S.A.P. only twenty days after Davis. As Judge Gross aptly notes, "[i]t is unlikely that the supreme court narrowed the delayed discovery doctrine in Davis on November 7, 2002, only to have it subsumed by equitable estoppel on November 27, 2002 in S.A.P.” Ryan, 841 So.2d at 526 (Gross, J., concurring specially).