LOGUE, J.
In this case, Jorge Rubio sued the Archdiocese of Miami, Inc. for negligence and vicarious liability related to alleged sexual abuse that he suffered as a child at the hands of his parish priest. The complaint at issue, however, was not filed until approximately thirty-five years after the alleged abuse ended. For the reasons stated below, we agree with the trial court that the statute of limitations barred Ru-bio’s claims. We therefore affirm the dismissal of the complaint.
I.
The amended complaint contains the following factual allegations, which we take as true only for the purpose of assessing whether the complaint survives the Archdiocese’s motion to dismiss.[1] Rubio was a devout Catholic who served as an altar boy at Our Lady of Divine Providence when he was child. Starting when he turned ten years old, for a two-year period from 1976 to 1977, Rubio was sexually abused by his parish priest, a man named Francisco Carrera. The abuse followed the classic pattern in which the sexual predator groomed his selected child-victim with compliments and special favors. In Ru-bio’s case, the sexual predator used his position as a priest employed by the Archdiocese to prepare, commit, and conceal the abuse. The Archdiocese knew of Carr-era’s history of molesting underage boys, but nevertheless continued to hold Carrera out as a priest and spiritual leader. When it became of aware of Carrera’s misconduct, the Archdiocese failed to report the sexual abuse as required by law. Instead, the Archdiocese transferred Carrera to different parishes, and ultimately to Spain, to conceal his criminal behavior from his parishioners and the public. This conduct was part of a systematic cover-up that reached to the highest levels of the Vati *281 can. The Archdiocese was negligent in hiring and retaining Carrera, and was vicariously liable, as the employer, for Carr-era’s misconduct. These are the pertinent allegations in the sixteen-page complaint.
It is undisputed that Rubio’s initial complaint was not filed until May 2011, approximately thirty-five years after the alleged abuse, at which time Rubio was forty-five years old. The Archdiocese moved to dismiss the complaint on statute of limitations grounds. The trial court dismissed the amended complaint with prejudice. This appeal followed.
II.
Normally, a claim for injuries based on another party’s negligent conduct must be filed within four years of the incident under the applicable statute of limitations. § 95.051, Fla. Stat. (2011). Rubio seeks to overcome the statute of limitations by the application of the doctrine of equitable es-toppel. We conclude that equitable estop-pel does not apply in this case because Rubio has not alleged any facts indicating the Archdiocese caused or induced him to refrain from filing suit within the limitations period.
The doctrine of equitable estoppel typically applies to avoid a statute of limitations defense where the injured party recognized the basis for the suit but the party that caused the injury induced the injured party to forbear from filing suit during the limitations period. Major League Baseball v. Morsani, 790 So.2d 1071, 1078 (Fla.2001). As explained by the Court,
a main purpose of the statute of limitations is to protect defendants from unfair surprise and stale claims. A prime purpose of the doctrine of equitable es-toppel, on the other hand, is to prevent a party from profiting from his or her wrongdoing. Logic dictates that a defendant cannot be taken by surprise by the late filing of a suit when the defendant’s own actions are responsible for the tardiness of the filing. The two concepts, i.e., the statute of limitations and equitable estoppel, thus work hand in hand to achieve a common goal, the prevention of injustice.

Id.

The Fourth District Court of Appeal has held that equitable estoppel did not apply to avoid the statute of limitations defense in a case with facts virtually identical to the instant case. In John Doe No. 23 v. Archdiocese of Miami, Inc., 965 So.2d 1186, 1187 (Fla. 4th DCA 2007), the plaintiff filed suit against the Archdiocese of Miami alleging that he had been sexually abused by a teacher and a clergyman at a Catholic high school more than thirty years earlier. In response to the Archdiocese’s statute of limitations defense, John Doe No. 28 asserted that the doctrine of equitable estoppel should apply because the Archdiocese had concealed its knowledge that its employees had abused other students. Id.
In rejecting this argument, the Fourth District noted that “[t]o assert equitable estoppel, the defendant must have engaged in wrongful conduct which ‘induced another into forbearing suit within the applicable limitations period.’ ” Id. (quoting Morsani, 790 So.2d at 1079). The district court observed, however, that during the time available to file the suit under the statute of limitations, the plaintiff knew the abuse had occurred, knew the identity of the abusers, and knew the abusers worked for the Archdiocese. John Doe No. 23, 965 So.2d at 1188. In light of this knowledge, the plaintiff’s failure to allege acts by the Archdiocese that “explain how he was induced by the Archdiocese to wait almost three decades to sue for abuse” *282 precluded application of equitable estoppel. Id. at 1187-88. Concluding that equitable estoppel did not apply, the court held that the complaint had been properly dismissed. Id. at 1188.
We agree with the Fourth District’s decision in John Doe No. 23. As the court found in that case, so too, here, Rubio knew the abuse had occurred, knew the identity of the abuser, and knew the abuser worked for the Archdiocese. Yet, the amended complaint fails to allege any acts of the Archdiocese towards Rubio that caused him to delay filing his claims for the three decades that elapsed since the time he had allegedly been abused as a child. As such, there is simply no basis upon which to apply the doctrine of equitable estoppel.
Rubio, however, argues that his case should come within the rule announced by the Florida Supreme Court in Florida Department of Health & Rehabilitative Services. v. S.A.P., 835 So.2d 1091 (Fla.2002). S.A.P. involved a minor who had been burnt, beaten, and otherwise seriously abused at the age of four, while she was in a foster care placement that was supervised by the Department of Health and Rehabilitative Services. Id. at 1093. Because the abuse occurred at a young age, S.A.P. for years did not remember it. Id. at 1099. At the time of the abuse, the Department was the only legal entity (besides the foster parents who committed the abuse) who were in a position to assert and protect S.A.P.’s legal rights. Instead of protecting her legal rights when the abuse finally came to light, the Department allegedly falsified government reports, altered government records, and obstructed a law enforcement investigation to actively conceal its misdeeds. Id. With respect to the Department’s supervisory duties, the complaint alleged that the Department
falsified records so that it appeared that the case worker had conducted monthly supervision visits with [S.A.P.] and her sister. The records reveal that the foster home was frequently visited and that S.A.P. and her sister were doing fine. Had any interested adult examined these records prior to December 21, 1992, they would have been misled into believing that the department had reasonably, appropriately, and lawfully discharged its supervision duties.
Id. Moreover, in terms of timing: S.A.P. was abused in 1979; an internal departmental report documenting its wrong-doing was released at the end of 1992; she reached the age of majority in 1994; and she filed her lawsuit in 1995. Id. at 1094. The Court held that the Department, under these facts, was equitably estopped from asserting a statute of limitations defense. Id. at 1100.
S.A.P. is distinguishable from the instant matter. In S.AP., the plaintiff was a foster child at the time of the alleged abuse, and therefore a ward of the state within the ostensible protection and care of the Department. This relationship in S.A.P. caused the Department’s alleged actions to constitute such an egregious violation of their duty towards S.A.P. The very people tasked with protecting S.A.P. not only failed entirely in the discharge of that duty, but also violated laws and falsified government records to conceal their negligence, such that S.A.P., who had no active memory of the abuse until her late teen years, was unaware the Department had engaged in any wrongdoing until the results of an internal investigation were released in 1992. Moreover, S.A.P. filed her complaint within three years of this information coming to light. The Florida Supreme Court explicitly recognized that its holding in S:A.P. “is consistent with this Court’s reliance upon the principle *283 that our courts will not protect defendants who are directly responsible for delays of filing because of their own willful acts.” Id. at 1094.
Concerning the holding of S.A.P., we find Justice Raoul Cantero’s dissenting opinion in Ryan v. Lobo De Gonzalez, 921 So.2d 572, 577 (Fla.2005) (Cantero, J., dissenting), persuasive. He wrote that “[s]everal facts in S.A.P. render that case unique” and indicated that the holding of S.A.P. should be narrowly construed:
We simply determined that, where a four-year-old child was sexually abused by foster parents; where the state actively concealed the abuse, obstructed a police investigation, and falsified records; and where the plaintiff filed suit within three years after the release of documents admitting the abuse, the doctrine of equitable estoppel prevented the state from asserting a statute of limitations defense.

Id.

Here, although Rubio asserts that the Archdiocese took actions to conceal Carr-era’s sexual abuse of Rubio and other boys, the amended complaint does not allege that the Archdiocese stood in the role of Rubio’s parents, which was essentially the role of the Department in S.A.P. It does not allege the Archdiocese falsified government reports or altered government records, or obstructed a law enforcement investigation. Moreover, the delay of three decades in the instant matter bears no relationship to the delay of three years past the revelation of the abuse in S.A.P. Accordingly, as did the Fourth District before us, we decline to extend S.A.P. to these facts. See John Doe No. 23, 965 So.2d at 1187.
III.
Rubio also asserts that equitable estop-pel should apply here because the Archdiocese breached its affirmative duty to disclose its knowledge of Carrera’s conduct, which it owed to Rubio because of the fiduciary relationship between the parties. As did the Fourth District in John Doe No. 23, we fail to see how any such fiduciary duty, even if one is assumed, caused Rubio to delay in filing his claim for over three decades. 965 So.2d at 1187-88. Similarly, we do not see how the Archdiocese’s alleged failure to report the sexual abuse, even if required by law at the time, caused Rubio to refrain from filing suit for thirty years.
IY.
In upholding the dismissal of the complaint in this case because of the delay of several decades in filing the claim, we are mindful that society benefits when survivors of child sexual abuse come forward and bear witness to what they were forced to endure as children. We certainly do not intend to discredit the courage of these survivors who break the silence that shielded their abusers. We hold only that Rubio’s lawsuit for money damages cannot be filed so long after the alleged injury was inflicted.

. See, e.g., Fla. Dep't of Health & Rehabilitative Servs. v. S.A.P., 835 So.2d 1091, 1094 (Fla.2002) ("Because this case is before us on the trial court’s dismissal of S.A.P.’s second amended complaint, we must take all the factual allegations in her complaint as true and construe all reasonable inferences from those facts in her favor.”).