DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**W.D.,**
Appellant,

v.

**ARCHDIOCESE OF MIAMI, INC.; ARCHDIOCESE OF MIAMI, A CORPORATION SOLE; ARCHBISHOP WENSKI AS CORPORATE SOLE OF THE ARCHDIOCESE OF MIAMI; ST. BERNADETTE HOME & SCHOOL ASSOCIATION, INC.; REV. J.Q.; M.O.,** as Personal Representative of the Estate of **REV. P.O.;** and **LAWRENCE FRANCO, ESQ.,** as Personal Representative of the Estate of **REV. E.B.,**
Appellees.

No. 4D15-550

[June 1, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol-Lisa Phillips, Judge; L.T. Case No. CACE13024204(25).

Stephen L. Malove of Malove Henratty, P.A., Fort Lauderdale and Adam Lawrence of Lawrence & Daniels, Miami, for appellant.

Elaine D. Walter, Michael A. Mullen and Joseph M. Winsby of Gaebe, Mullen, Antonelli & DiMatteo, P.A., Coral Gables, J. Patrick Fitzgerald and Robert J. Diaz of J. Patrick Fitzgerald, P.A., Coral Gables, for appellees.

MAY, J.

The plaintiff appeals an order dismissing with prejudice his second amended complaint against the defendants: Archdiocese of Miami, Inc.; Archdiocese of Miami, a Corporation Sole; Archbishop Wenski as Corporate Sole of the Archdiocese of Miami (collectively "Archdiocese"); and St. Bernadette Home & School Association, Inc. ("school"). He argues the trial court erred in dismissing the complaint as time-barred. We disagree and affirm.

The second amended complaint contained the following allegations. The plaintiff attended a school owned, operated, and staffed by the Archdiocese from 1980 to 1986. At six years of age, the plaintiff

experienced sexual abuse by a boy off of school grounds. His mother reported the incident to the school.

In the second amended complaint, the plaintiff alleged details of how three priests sexually abused him over a period of time while pretending to counsel him about the off-campus abuse. He alleged that after each incident, the plaintiff was sent back to class. He used survival tactics to disassociate from the abuse by convincing his mind the abuse was not real. This caused the memories of the abuse to be repressed, triggering traumatic amnesia.

The plaintiff alleged the three priests threatened to harm him and his mother if he told anyone about the incidents. These threats silenced the plaintiff, prevented a report of the abuse, and caused him to repress the traumatic events. The plaintiff suffered severe emotional consequences and drew pictures of the events. His mother and aunt saw the pictures.

That caused his mother to notify the Archdiocese and/or school about the plaintiff's behavior, but no action was taken other than recommending one of their therapists. The plaintiff alleged that despite the Archdiocese's and school's knowledge of the sexual abuse, they continued to give the priests unfettered access to him and created a plan to protect the priests and themselves from scandal and liability.

The plaintiff alleged that in 1986, priest #1 and the Archdiocese and/or school bought the plaintiff and his mother a house after learning about the mother's concerns. Priest #1 obtained a loan from the Archdiocese and/or school to purchase the house and made the mortgage payments until 1991 when the plaintiff's mother deeded the house back to priest #1.

The plaintiff generally alleged the Catholic Church's policies and practices were to destroy incriminating documents and shuttle sexually abusive priests from parish to parish to cover up their sexual abuse and avoid scandal, criminal prosecution, and civil litigation. He alleged the Archdiocese and school acted in accordance with those policies and practices because all three priests had been shuttled from parish to parish both before and after the abuse. Essentially, the plaintiff alleged they knew, or should have known, that the priests abused the plaintiff and others and conspired to cover it up.

In the spring of 2013, the plaintiff began to recall the prior abuse when he came across a picture of himself as a seven-year-old. This, coupled with something he witnessed, caused the plaintiff to have a flashback. His mother then told him about the physical manifestations of the abuse he

exhibited as a child.

Within a year of his awareness, the plaintiff filed a complaint against the Archdiocese, the school, priest #3, and the estates of priests #1 and #2. The amended complaint, filed in January 2014, asserted claims for: (1) intentional infliction of emotional distress, (2) negligence, and (3) respondeat superior. The trial court dismissed the amended complaint, citing *Hearndon v. Graham*, 767 So. 2d 1179 (Fla. 2000). The court reasoned that equitable estoppel did not toll the statute of limitations because the plaintiff failed to allege specific affirmative conduct by the Archdiocese and school that showed they tried to delay the plaintiff's claims. When the plaintiff moved for clarification, the court entered another order:

> This court has read and re-read 95.11(7) and (9) Florida Statutes, *Hearndon*, *Cisko*, and *Davis*, as well as the pleadings and The Florida Bar article. Rehearing as to the Archdiocese is granted and this court hereby amends its order to a dismissal without prejudice, allowing leave to Amend if able to state a cause of action.

The plaintiff filed a second amended complaint, asserting the same claims against the Archdiocese and school.

The Archdiocese and school moved to dismiss, arguing the plaintiff's claims were barred by the statute of limitations. They argued the complaint had to be filed within four years of the abuse (1986), or within four years of the plaintiff reaching the age of majority (1997). They further argued that *Hearndon*'s delayed discovery doctrine applied only to intentional tort claims against the perpetrator, not the perpetrator's employer.

They also argued that: (1) equitable estoppel based on fraudulent concealment cannot be used to circumvent the statute of limitations; (2) section 95.11(9), Florida Statutes, is inapplicable because it applies only to actions which would not be time-barred before July 1, 2010; and (3) the respondeat superior claims cannot be based upon the clergy's sexual abuse.

The plaintiff responded that his claims were timely under sections 95.11(7) and (9), Florida Statutes, by virtue of *Hearndon*'s delayed discovery doctrine. He responded that the claims were timely under the doctrine of equitable estoppel because the Archdiocese and school tormented him into a state of self-protective amnesia, which tolled the

statute of limitations.  Lastly, he responded that his claims for respondeat superior were not barred by the "scope of employment" rule because the priests were acting on behalf of the Archdiocese and school.

At the hearing, the trial court reserved ruling, but subsequently granted the motion to dismiss the second amended complaint with prejudice.  The court then entered final judgment.  From that final judgment, the plaintiff now appeals.

The parties reiterate their respective arguments on appeal.  We have de novo review.  *Burgess v. N. Broward Hosp. Dist.*, 126 So. 3d 430, 433 (Fla. 4th DCA 2013) (citing *MEBA Med. & Benefits Plan v. Lago*, 867 So. 2d 1184, 1186 (Fla. 4th DCA 2004)).

Sections 95.11(3)(a), (o), and (p), Florida Statutes (2014), provide a four year statute of limitations for negligence, intentional infliction of emotional distress, and respondeat superior claims.  § 95.11(3)(a), (o), (p), Fla. Stat. (2014).  Here, the plaintiff's complaint was filed long after the generic four year statute of limitations expired.  His claims are barred unless an exception exists.  The delayed discovery doctrine is one such exception.

"The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action."  *Hearndon*, 767 So. 2d at 1184.  In *Hearndon*, our supreme court applied the doctrine to a complaint against an individual alleging child sexual abuse that had occurred sixteen plus years prior to the filing of the complaint.  *Id.* at 1181–82.

The court reasoned that the delayed discovery doctrine should apply to a child sexual abuse case because:  (1) "it is widely recognized that the shock and confusion resultant from childhood molestation . . . may lead a child to deny or suppress such abuse from his or her consciousness"; and (2) "it would seem patently unfair to deny its use to victims of a uniquely sinister form of abuse."  *Id.* at 1186.  *Hearndon* did not specifically address whether the delayed discovery doctrine applied in all childhood sexual abuse cases involving traumatic amnesia.

Subsequently, in *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002), the supreme court refused to apply the delayed discovery doctrine to claims for breach of fiduciary duty, civil theft, conspiracy, conversion, and unjust enrichment.  *Id.* at 709–10.  Citing sections 95.11(4) and (7), the court stated: "Aside from the provisions above for the delayed accrual of a cause of action in cases of fraud, products liability, professional and medical

4

malpractice, and intentional torts based on abuse, there is no other statutory basis for the delayed discovery rule." *Id.* at 710. The court indicated that its application of the doctrine in *Hearndon* was due to the "unique and sinister nature of childhood sexual abuse, as well as the fact that the doctrine is applicable to similar cases where the tortious acts cause the delay in discovery." *Id.* at 712.

In *Cisko v. Diocese of Steubenville*, 123 So. 3d 83 (Fla. 3d DCA 2013), the Third District recognized the limited application of *Hearndon*'s delayed discovery doctrine. *Id.* at 84. "The [supreme court's] opinion strongly suggests the holding hinges not only on these specific allegations but also on the specific cause of action: a suit for intentional tort *against the perpetrator.*" *Id.* (emphasis added). The Third District affirmed a summary judgment for the diocese because the legislature had not extended the limitations period under section 95.11(7) to claims other than intentional torts. *Id.* at 85.

In *Doe v. Sinrod*, 90 So. 3d 852 (Fla. 4th DCA 2012), we reviewed section 95.11(7)'s application to section 768.28(14), Florida Statutes. *Id.* at 854. There, the plaintiff filed a complaint in 2010 alleging a second-grade teacher sexually assaulted and molested her seven years before. *Id.* at 853. The school board moved to dismiss based on the statute of limitations, which the trial court granted. *Id.* at 853–54. We affirmed. We held that section 768.28(14)'s time limitation for negligent tort claims against state agencies controlled over section 95.11(7), which provided the statute of limitations for intentional torts based on a child's sexual abuse by an individual. *Id.* at 855–56.

*Davis*, *Cisko*, and *Sinrod* all lead to but one conclusion: *Hearndon*'s delayed discovery doctrine applies only to intentional tort claims against the perpetrator of the sexual abuse. Thus, it does not apply to the plaintiff's claims against the Archdiocese and school. The trial court did not err in dismissing the second amended complaint with prejudice.

The plaintiff next argues that section 95.11(7) applies because his claims are "based on" or "founded on" the Archdiocese and school's intentional conduct. He also argues that section 95.11(7) applies to intentional torts "based on" and "founded on" abuse, including claims against third parties arising out of a willful act of child abuse. He argues that because the claim for intentional infliction of emotional distress is an intentional tort, section 95.11(7) applies. And, he argues section 95.11(7) applies to the respondeat superior claims because they are "based on" and "founded on" the priests' intentional conduct.

5

The Archdiocese and school respond that section 95.11(7) does not apply because the claims against them are not intentional torts. They argue the legislature did not intend section 95.11(7) to cover institutional child abuse or neglect because the statute does not include institutions within the definitions of abuse. We agree with the Archdiocese and school.

Section 95.11(7), Florida Statutes, provides:

> An action founded on alleged abuse, as defined in s. 39.01, s. 415.102, or s. 984.03, or incest, as defined in s. 826.04, may be commenced at any time within 7 years after the age of majority, or within 4 years after the injured person leaves the dependency of the abuser, or within 4 years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later.

§ 95.11(7), Fla. Stat. (2014).

The three definitions of abuse found in sections 39.01, 415.102, and 984.03, however, do not apply to the negligence claims against the Archdiocese and school. The definitions of abuse cross-referenced in section 95.11(7) *do not provide for abuse by an institution.* Rather, section 39.01 outlines separate subsections for definitions of abuse where an institution is involved. *See* § 39.01(32), (47), Fla. Stat. (2014).

This conclusion is consistent with *Sinrod* where we read section 95.11(7) to apply only to "intentional torts committed by an individual," and not to negligence claims. *Sinrod*, 90 So. 3d at 854. It is also consistent with the Third District's holding in *Cisko* where the delayed discovery doctrine was limited to intentional torts against the perpetrator of the childhood sexual abuse. *Cisko*, 123 So. 3d at 84–85. Section 95.11(7) does not save the plaintiff's claims against the Archdiocese and school.

Section 95.11(7) likewise does not apply to the plaintiff's claims for intentional infliction of emotional distress for the same reason. Although that claim is an intentional tort, it is based upon the theory of respondeat superior and not the direct intentional acts of the Archdiocese and school, which are institutional defendants. The plaintiff's attempt to bootstrap the respondeat superior claims against institutional defendants to the intentional acts of the priests fails. Simply put, section 95.11(7) applies to intentional torts against perpetrators of abuse, not to the vicarious liability of the principal for the act of its agents. *See Cisko*, 123 So. 3d at 84–85; *Sinrod*, 90 So. 3d at 854.

6

The plaintiff next relies on section 95.11(9), Florida Statutes, to provide a detour around the statute of limitations. The statute was enacted in 2010, and provides:

> An action related to an act constituting a violation of s. 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time. This subsection applies to any such action other than one which would have been time barred on or before July 1, 2010.

§ 95.11, Fla. Stat. (2014).

Section 794.011 is the sexual battery statute. Section 95.11(9), therefore, provides that an action *related to* an act of sexual battery involving a victim under 16 has no statute of limitations *as long as it is not time barred on or before July 1, 2010*. The language is broad enough to include a cause of action against a non-perpetrator if it is related to a sexual battery. But, the claim cannot be time-barred on or before July 1, 2010.

The Third District recently had occasion to rule on this statute's application to an otherwise time-barred claim. *Firestone v. Temple Beth Sholom*, 183 So. 3d 1225 (Fla. 3d DCA 2016). There, the plaintiff filed a complaint forty years after the alleged sexual abuse, which occurred when she was a minor. *Id.* at 1226. She sued the Temple for vicarious liability for the actions of one of its teachers. *Id.* She also alleged the Temple violated its fiduciary duty to her. *Id.* She alleged the delay "was due to the traumatic nature of the abuse inflicted upon her which caused her to suffer repressed memory syndrome and, consequently, she had no memory of the abuse until 2009, when it resurfaced." *Id.*

The Third District noted that section 95.11(7) tolled the statute of limitations for certain sexual abuse crimes, but the statute was limited to intentional torts. *Id.* The Third District then evaluated section 95.11(9)'s application: "Without reaching the issue of whether this provision covers the theories of liability relied upon by [the plaintiff], we note that this provision does not apply to causes of action that accrued and would be time barred on or before July 1, 2010." *Id.* at 1227. The court concluded that because the plaintiff's claim would have been time-barred, the statute did not rescue the claim. *Id.*

We agree with the Third District. The plaintiff's claims for negligence and intentional infliction of emotional distress against the Archdiocese and

school were time-barred before July 1, 2010, since neither the delayed discovery doctrine nor section 95.11(7) applied to the accrual of those claims.

The statute is prospective from its language, and applies only to claims that were not time-barred prior to its enactment. Because the plaintiff's respondeat superior claims were time-barred before July 1, 2010, and not saved by the delayed discovery doctrine or section 95.11(7), the trial court properly dismissed those claims.

Because the plaintiff's respondeat superior claims are time-barred and not rescued by *Hearndon,* section 95.11(7), or section 95.11(9), we need not address the plaintiff's suggestion that the priests were acting within the course and scope of their employment with the Archdiocese and school when they committed the alleged sexual abuse.

Lastly, the plaintiff argues his claims were timely under the doctrine of equitable estoppel. He asserts the doctrine prevented the accrual of his causes of action against the Archdiocese and school because the trauma of the priests' abuse and threats of violence, which the Archdiocese and school condoned or concealed, caused him to repress the memory of his abuse.

The Archdiocese and school respond the trial court properly dismissed the equitable estoppel claim because the plaintiff failed to allege they lulled him into a position which caused him to fail to assert his rights, or that they engaged in conduct that induced him into forbearing suit within the applicable limitations period. They argue that equitable estoppel cannot apply because the defendant was unaware of his cause of action until he remembered his repressed memories.

"The doctrine of equitable estoppel typically applies to avoid a statute of limitations defense where the injured party recognized the basis for the suit but the party that caused the injury induced the injured party to forbear from filing suit during the limitations period." *Rubio v. Archdiocese of Miami, Inc.,* 114 So. 3d 279, 281 (Fla. 3d DCA 2013) (citation omitted). "To assert equitable estoppel, the defendant must have engaged in *wrongful conduct* which 'induced another into forebearing suit within the applicable limitations period.'" *John Doe No. 23 v. Archdiocese of Miami, Inc.,* 965 So. 2d 1186, 1187 (Fla. 4th DCA 2007) (emphasis added) (quoting *Major League Baseball v. Morsani,* 790 So. 2d 1071, 1079 (Fla. 2001)).

Our decision in *John Doe No. 23*, is on point. There, the plaintiff filed a complaint against the archdiocese alleging he was sexually abused by its

employees when he was a student in the early 1970s, but waited more than thirty years to file suit. *John Doe No. 23*, 965 So. 2d at 1187. The archdiocese moved to dismiss asserting a statute of limitations defense. *Id.*

The plaintiff sought to avoid the statute of limitations by relying on the theory of equitable estoppel. *Id.* The plaintiff alleged that his delay in filing suit resulted from the archdiocese's concealment of its knowledge that the subject employees sexually abused other boys. *Id.* We held that "the plaintiff failed to allege any wrongful conduct or specific acts of fraud or fraudulent concealment by defendants at any point after the acts alleged in his amended complaint to justify applying the theory of equitable estoppel." *Id.* Even though the plaintiff claimed the archdiocese breached a fiduciary duty to disclose the abuse of the other boys, it does not explain how the plaintiff was induced to wait almost three decades to sue for abuse. *Id.* at 1187–88; *see also Rubio*, 114 So. 3d at 281–82.

Here, there are no allegations that the Archdiocese and school actively induced the plaintiff into forbearing a lawsuit. The plaintiff would have had to have been aware of his right to sue, and then fail to file because of the Archdiocese and school's actions. This is contrary to his asserted position that he had no memory of the alleged abuse. The allegations are insufficient to support an equitable estoppel claim.

*Affirmed.*

FORST, J., and SCHER, ROSEMARIE, Associate Judge, concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**

9